PEOPLE *v.* PENNOCK.

1. MUNICIPAL CORPORATIONS—POLICE POWER—CONTRACEPTIVE DEVICES—PROPHYLACTIC RUBBER GOODS.

Traffic in contraceptive devices and prophylactic rubber goods or other articles of like character is subject to regulation within the police power of a municipal corporation since, although sale and use of such articles under certain conditions are wholly legitimate and essential to public welfare, indiscriminate merchandizing, rendering them offensively available and encouraging use for other than legitimate reasons, is a menace to public morals and welfare (Detroit Ordinance 85 D).

2. SAME—POLICE POWER—DISPLAYING OR ADVERTISING CONTRACEPTIVE DEVICES.

It was not an abuse or an excessive exercise of the police power by a city to enact an ordinance making it unlawful to display or advertise for sale within the city contraceptive devices and prophylactic rubber goods or other articles of a like nature (Detroit Ordinance 85 D).

3. SAME—ORDINANCES—PUBLIC PEACE, HEALTH AND SAFETY.

   The declaration in an ordinance that it was necessary for the preservation of the public peace, health and safety is not conclusive of power to enact but is indicative of purpose of the ordinance.

4. CONSTITUTIONAL LAW—POLICE POWER—ORDINANCES.

   Ordinances having for their purpose regulated municipal development, the security of home life, the preservation of a favorable environment in which to rear children, the protection of morals and health, the attraction of a desirable citizenship and fostering its permanency are within the proper ambit of the police power.

5. SAME—ORDINANCES—CLASS LEGISLATION—SALE OF CONTRACEPTIVES —RESTRICTIONS.

   A city ordinance prohibiting the display or advertising of contraceptive devices and prophylactic rubber goods and other articles of like nature and restricting the making of sales thereof to druggists operating a bona fide drug store equipped with a prescription department and actually engaged in business of compounding prescriptions and duly licensed physicians *held*, not unconstitutional as class legislation, since the imposition of restrictions is reasonable, justifiable, and germane to the purpose sought to be accomplished (Detroit Ordinance 85 D).

6. SAME—SALE OF CONTRACEPTIVES—RESTRICTIONS.

   The advisability or necessity of imposing restrictions or limitations upon the class of persons who could lawfully make sales of contraceptive devices and prophylactic rubber goods or other articles of a like nature is, within reason, a legislative question, not a judicial one (Detroit Ordinance 85 D).

7. SAME—RIGHT TO ENGAGE IN BUSINESS.

   A regulatory measure enacted in the exercise of the police power does not violate the constitutional right to engage in business solely because it results in permitting some to engage in a certain traffic or activity and prohibits others from doing so.

8. SAME—MUNICIPAL ORDINANCE—SALE OF CONTRACEPTIVES—PHARMACISTS—CLASS LEGISLATION.

   Whether or not the limitation on right to make sales of contraceptive devices and prophylactic rubber goods or other articles of like nature to druggists operating a bona fide drug store equipped with a prescription department and actually engaged in business of compounding prescriptions and to duly licensed physicians is the best method of limiting availability and minimizing improper use of such articles is a question for de-

termination by the body passing the ordinance provided the method adopted is not arbitrary or discriminatory and its enactment with such restriction is not violative of the constitutional rights of pharmacists not employed in such bona fide drug stores on the ground of unjustifiable classification or as being discriminatory, arbitrary or unreasonable (U. S. Const. am. 14, § 1; Mich. Const. 1908, art. 2, §§ 1, 16; Detroit Ordinance 85 D).

Appeal from Recorder's Court for the City of Detroit, Traffic and Ordinance Division; Maher (Thomas F.), J. Submitted June 26, 1940. (Docket No. 110, Calendar Nos. 40,795–40,802.) Decided September 6, 1940. Rehearing denied November 13, 1940. Leave to appeal to Supreme Court of the United States denied by Supreme Court of Michigan January 7, 1941.

Leonard Pennock and others were separately convicted of unlawfully selling contraceptive devices and prophylactic rubber goods. Affirmed.

*Bernstein & Bernstein* and *Herbert Burdick,* for appellants.

*Paul E. Krause,* Corporation Counsel, and *Nathaniel H. Goldstick,* for appellee.

North, J. Defendant, Leonard Pennock, and others were charged with violating sections 1 and 2 of ordinance No. 85-D of the city of Detroit. The ordinance is printed in the margin hereof.* On trial

---

* Detroit City Ordinance—85 D

It is hereby ordained by the people of the city of Detroit:

Section 1. That sections 1 and 2 of chapter 117 of the compiled ordinances of the city of Detroit for the year 1936 be and the same are hereby amended to read as follows:

Section 1. It shall be unlawful for any person, firm, corporation, copartnership or association to display or expose for sale any contraceptive device or any prophylactic rubber goods or any other articles for the prevention of venereal diseases and infections or any sex inciting device or contrivance in the city of Detroit or to display or expose any containers or packages containing or advertising the same. It shall be unlawful to advertise the sale of the same on any placards, billboards, handbills, newspapers, periodicals, signs or other printed

without a jury defendants were severally convicted and sentence imposed on each. They have appealed, and by stipulation the combined appeals are submitted on one record.

In brief, section 1 of the ordinance makes it unlawful to display or expose for sale in the city of Detroit any contraceptive device or any prophylactic rubber goods or other articles of like character or to advertise them for sale in any manner; and section 2 provides that the sale of any such article shall be unlawful except when the sale is made by "a druggist operating a bona fide drug store equipped with a prescription department and actually engaged in the business of compounding prescriptions and complying with the State pharmacy laws, or a physician duly licensed to practice in the State of Michigan;" and sales to retail drug stores by wholesale druggists, jobbers or manufacturers are permitted.

or painted matter, or by any means of publication either visual or auditory. It shall be unlawful for any person, firm, corporation, copartnership or association to make use of any sign using the word "Latex" or any other word referring to prophylactic rubber goods, or to advertise any price list for the same.

SEC. 2. It shall be unlawful for any person, firm, corporation, copartnership, or association, other than a druggist operating a bona fide drug store equipped with a prescription department and actually engaged in the business of compounding prescriptions and complying with the State pharmacy laws, or a physician duly licensed to practice in the State of Michigan, to sell, offer for sale, distribute or give away any appliance, drug or medicinal preparation intended or having special utility for the prevention of conception and/or venereal diseases, or any contraceptive device or any prophylactic rubber goods or any other articles for the prevention of venereal diseases and infections, or any sex-inciting device or contrivance in the city of Detroit, except that the foregoing provisions shall not apply to wholesale druggists, jobbers or manufacturers who sell to retail drug stores for resale, and provided, further, that all and any such articles, appliances, drugs or medicinal preparations herein described shall when sold, offered for sale, given away or distributed in accordance with the provisions of this section conspicuously bear the identification of the manufacturers thereon or on the retail container thereof.

SEC. 2. All ordinances or parts of ordinances in conflict herewith are hereby repealed.

SEC. 3. This ordinance is hereby declared to be necessary for the preservation of the public peace, health and safety and is hereby given immediate effect.

Sales of the articles covered by the ordinance were made by the respective defendants. The following appears in their brief:

"The facts in the case are undisputed. The defendants Pennock, Wood, Webb, Hutton and Weingarden are pharmacists duly registered by the State of Michigan and authorized to practice the profession of pharmacy, and are employed in stores selling prophylactic rubber goods. The defendant, Herman Band, is the owner of a store located in the city of Detroit, and in which establishment prophylactic rubber goods are sold. The defendant, Buck Masters, was an employee at a store at the city of Detroit where prophylactic rubber goods likewise were sold.

"It is conceded by the defendants that the stores at which they were employed do not conform with Sections 1 and 2 of the amended ordinance in that they are not bona fide drug stores, equipped with a prescription department and actually engaged in the business of compounding prescriptions. * * *

"The stores operated by the defendants dispense various kinds of rubber goods, which include rubber gloves, rubber pants, hot water bottles, food covers, latex stockings and kindred rubber articles, their principal business, however, being the sale of prophylactic rubber goods. These stores advertise their merchandise by maintaining signs on which is inscribed the word 'Latex.' The word 'Latex' means a rubber substance, but has become associated with the sale of prophylactic rubber goods to purchasers of these articles in the city of Detroit. A price list of prophylactic rubber goods is painted on the windows of these stores without, however, any designation of what said price lists refer to, such price lists, however, being understood by purchasers to refer to prophylactic rubber goods."

Appellants challenge the constitutionality of the ordinance on the following grounds: (1) It is not within the police power of the city or its common

council.    (2) It violates the equal protection clause
and also the due process clause of the State Consti-
tution and of the Federal Constitution.

It clearly appears from the record that the articles
specified in the ordinance are of such a character
that their unrestricted sale, possession, or use or
misuse adversely affects public health, welfare and
morals. It may be admitted that the sale and use of
the articles contemplated in this ordinance are under
certain conditions wholly legitimate and even essen-
tial to public health and welfare; but, as disclosed by
the testimony, indiscriminate merchandising of these
articles, which renders them offensively available
and tends to encourage their use for other than
legitimate reasons, is a menace to public morals
and public welfare. Therefore, traffic in them is sub-
ject to regulation within the police power of the city.
It was not an abuse or an excessive exercise of the
police power by the city to enact an ordinance
making it unlawful to display such articles for sale
or to advertise the same for sale. In passing the
ordinance the common council declared the same
"to be necessary for the preservation of the public
peace, health and safety." While this declaration
is not conclusive of power to enact, it is at least
indicative of purpose. Recently we have had occa-
sion to say:

"Ordinances having for their purpose regulated
municipal development, the security of home life,
the preservation of a favorable environment in
which to rear children, the protection of morals and
health, * * * the attraction of a desirable citizenship
and fostering its permanency are within the proper
ambit of the police power." *Cady* v. *City of Detroit,*
289 Mich. 499, 514.

Appellants assert the ordinance is unconstitutional
because it is class legislation and because it violates
the equal protection clause and the due process

clause of the State Constitution and of the Federal Constitution. Michigan Const. (1908) art. 2, §§ 1 and 16, and United States Const. amendment 14, § 1.

As to class legislation, appellants contend that even if the sales of these articles are subject to regulation incident to protecting public health, welfare and morals, limiting the right of sale to druggists operating bona fide drug stores equipped with prescription departments and actually engaged in the business of compounding prescriptions and complying with the State pharmacy laws, but excluding pharmacists employed in stores not of the type specified in the ordinance, has no relation to the purpose of the ordinance and therefore the classification is arbitrary and unreasonable and the ordinance thereby rendered invalid. In this connection appellants' brief states:

"The record is barren of any proof that the pharmacists who operate bona fide drug stores equipped with prescription departments and actually are engaged in the business of compounding prescriptions are any more qualified to make such sales than their brother pharmacists who do not have similar establishments. There is no requirement that the sale of such articles should be made at the prescription department, and, therefore, such requirement has no reasonable reason for being in the ordinance, except for the purpose of making a classification within a classification."

We are not in accord with appellants' contention that restricting sales to the type of drug stores specified in the ordinance results in "a classification within a classification." Instead, it is a justifiable additional limitation or restriction upon the conditions under which, and the persons by whom, the sales of such articles can lawfully be made; and this we think is reasonable, justifiable and germane to the

purpose sought to be accomplished by the ordinance. At least, the advisability or the necessity of imposing the additional restrictions or limitations upon the class of persons who could lawfully make sales of these articles was, within reason, a legislative question, not a judicial one.

In considering whether this ordinance should be held invalid on the ground it is class legislation, we must be mindful that one of the common and essential attributes of regulatory measures in the exercise of police power is that only those who comply with or come within the qualifying provisions may engage in the regulated traffic or activity. This results in permitting some to engage in the traffic or activity, but it likewise prohibits others doing so. This, however, does not of itself render a regulatory measure violative of the constitutional right to engage in business. The very nature of the activity regulated may justify minimizing the number of those who, or the places which, may engage therein. Such was the purpose and effect of legislation enacted in the days of licensed saloons, limiting their number (Act No. 291, § 39, Pub. Acts 1909), and its constitutionality seems not to have been questioned; but see *Rohde* v. *Wayne Circuit Judge,* 168 Mich. 683, 689; *Bryant* v. *Detroit Common Council,* 169 Mich. 299. The framers of this ordinance could scarcely have been unmindful of the obvious fact that making the purchase and possession of the articles under consideration less available would tend to restrict their possession and indiscriminate use for other than justifiable reasons. Limiting the right to make these sales so far as pharmacists are concerned to those operating or employed in drug stores of the type designated in the ordinance may or may not be the best method of limiting availability and minimizing improper use of

these articles. But that again is a question for the determination of the body passing the ordinance, provided the method adopted is not arbitrary or discriminatory. We are of the opinion that confining the right to make lawful sales of these articles to those persons designated in the ordinance cannot be said as a matter of law to be violative of defendants' constitutional rights on the ground of unjustifiable classification or as being discriminatory, arbitrary or unreasonable.

"All business and occupations are conducted subject to the exercise of the police power. Individual freedom must yield to regulations for the public good. It may be laid down as a general principle that legislation is valid which has for its object the promotion of the public health, safety, morals, convenience and general welfare or the prevention of fraud or immorality." *People, ex rel. Armstrong,* v. *Warden,* 183 N. Y. 223 (76 N. E. 11, 2 L. R. A. [N. S.] 859, 5 Ann. Cas. 325).

*McConnell* v. *City of Knoxville,* 172 Tenn. 190 (110 S. W. [2d] 478, 113 A. L. R. 966), is quite on all fours with the instant case, and in a well-reasoned opinion the Tennessee court sustained an ordinance of like purport. Our review of this record brings the conviction that defendants are not by this ordinance deprived of their constitutional rights or any of them, as asserted in their brief.

The judgments entered are affirmed.

Bushnell, C. J., and Sharpe, Chandler, McAllister, Wiest, and Butzel, JJ., concurred. The late Justice Potter took no part in this decision.