PEOPLE v VICKERY
(CITY OF EAST DETROIT v VICKERY)
PEOPLE v BRABOY
(CITY OF EAST DETROIT v BRABOY)
PEOPLE v LININGTON
(CITY OF EAST DETROIT v LININGTON)

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—MUNICIPAL ORDINANCES—STATE LAWS—
   CRIMINAL OBSCENITY ORDINANCES.

   A municipal ordinance may be considered state law for purposes
   of United States constitutional law and there is nothing in the
   U. S. Constitution or in the U. S. Supreme Court cases that
   would prohibit municipalities from enacting criminal obscenity
   ordinances.

2. MUNICIPAL CORPORATIONS—HOME-RULE CITIES—CHARTERS—STATE
   LAWS—ORDINANCES—CONFLICTS—MUNICIPAL CONCERNS.

   A home-rule city has the statutory power to adopt a charter that
   provides for the enforcement of all regulations which are not in
   conflict with the general laws and for authority to pass all laws
   and ordinances relating to the city's municipal concerns subject
   to the constitution and general laws of this state; therefore, the
   city council of a home-rule city may adopt obscenity ordinances
   where the city charter provides that the city may regulate or
   prevent all things detrimental to the health, morals, comfort,
   safety, convenience and welfare of the inhabitants of the city
   (MCLA 117.4i[9]; MSA 5.2082[9]).

3. MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW—HOME-RULE
   STATUTE—MUNICIPAL CONCERNS—ORDINANCES—PRESUMPTION
   OF VALIDITY—OBSCENITY.

   Municipal regulatory authority under the Michigan Constitution

REFERENCES FOR POINTS IN HEADNOTES
[1, 4–11] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity § 3 *et
   seq.*
[2, 3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
   Political Subdivisions §§ 126, 127.
[12] 5 Am Jur 2d, Appeal and Error § 840 *et seq.*

and the home-rule statute is limited to areas of municipal concern, and since the constitutionality of an ordinance is presumed, a defendant charged with violating an obscenity ordinance bears the burden of showing that obscenity ordinances are of no municipal concern in that they bear no real or substantive relation to the public health, morals, safety, or general welfare of the municipality (Const 1963, art 7, § 22, MCLA 117.4j[3]; MSA 5.2083[3]).

4. OBSCENITY—STATUTES—PREEMPTION—LEGISLATIVE INTENT—MUNICIPAL REGULATIONS.

The state Legislature has not preempted the regulation of obscenity by the passage of the state obscenity statutes since the statutes contain no clear and unequivocal statement of legislative intent to preempt; therefore, municipalities are not preempted from regulation of obscenity.

5. OBSCENITY—STATUTES—ORDINANCES—CONFLICTS.

The Court of Appeals may strike down a municipal obscenity ordinance if the Court concludes that the ordinance and a state obscenity statute impermissibly conflict; however, the Court of Appeals is unable to determine if there is such a conflict where the Court cannot be certain what the state obscenity statute prohibits or permits in light of case precedent established by the Supreme Court (MCLA 750.343a et seq.; MSA 28.575[1] et seq.).

6. STATUTES—ORDINANCES—CONFLICTS—CASE-BY-CASE DETERMINATIONS.

The question of conflict between a municipal ordinance and a state statute is difficult of solution and cannot be determined by any fixed rule; each particular case must be determined as it arises.

7. OBSCENITY—CONSTITUTIONAL LAW—ORDINANCES—MUNICIPAL CONCERNS—PREEMPTIONS—CONFLICTS.

The validity of an obscenity ordinance must be examined under the First Amendment to the U. S. Constitution where it has been determined that obscenity is a municipal concern, that the state statutes have not preempted the obscenity regulation, and that there is no conflict between the ordinance and the state statutes.

8. CONSTITUTIONAL LAW—OBSCENITY—ORDINANCES—SUBSEQUENT AMENDMENTS.

Subsequent amendments to an obscenity ordinance cannot be

considered in assessing the constitutionality of defendants' convictions under the ordinances extant at their arrests (Const 1963, art 1, § 10).

9. OBSCENITY—CONSTITUTIONAL LAW—ORDINANCES—SPECIFICITY— SUBSTANTIVE CONSTITUTIONAL LIMITATIONS—PATENTLY OFFENSIVE—CASE PRECEDENT.

Convictions under an obscenity ordinance which, although not wanting in specificity, exceeds the substantive constitutional limitations on the type of material subject to a determination of what a jury might find "patently offensive", must fall because there is a limit beyond which neither legislative draftsmen nor juries may go in concluding that particular material is "patently offensive" within the meaning of the obscenity tests set forth by the U. S. Supreme Court.

10. OBSCENITY—CONSTITUTIONAL LAW—NUDITY.

An ordinance which attempts to prohibit material showing nudity goes too far since nudity alone is not enough to make material legally obscene.

11. OBSCENITY—CONSTITUTIONAL LAW—ORDINANCES—PROTECTED SPEECH—INADEQUATE RECORDS.

Convictions under an obscenity ordinance must be reversed where at least parts of the ordinance condemn constitutionally protected free speech and where there is no trial court opinion that indicates what particular sections of the ordinance were the basis for the convictions.

DISSENT BY DANHOF, P. J.

12. APPEAL AND ERROR—TRIAL COURT—PRESUMPTIONS.

*It is presumed that a trial court will follow the law; therefore, a matter not decided by the trial court is not properly before the Court of Appeals.*

Appeal from Macomb, Edward J. Gallagher, J. Submitted January 6, 1976, at Lansing. (Docket Nos. 22849–22851.) Decided May 27, 1976. Leave to appeal applied for.

Robert L. Vickery, Galen O. Braboy and William Linington were convicted in municipal court of violating certain ordinances prohibiting the showing of obscene materials. Defendants appealed to

circuit court where the convictions were reversed.
The people appeal by leave granted. Affirmed.

*Mihelich & Carlson,* for the people.

*Daner, Freeman, McKenzie & Matthews, P. C.,*
for defendants.

Before: DANHOF, P. J., and V. J. BRENNAN and
M. J. KELLY, JJ.

V. J. BRENNAN, J. We must determine if a mu-
nicipality may enact ordinances imposing criminal
liability for the display of obscene motion pictures
and, if possessing the authority to do so, the City
of East Detroit has enacted ordinances that are
permissible under the First Amendment of the
United States Constitution.[1]

The City of East Detroit, in July 1973, enacted
ordinances purporting to punish obscenity. The
regulations that are pertinent to this case are set
out in the margin.[2] In October, 1973, defendants—

---

[1] US Const, Am I.

[2] "Section 9.301. Obscene, sadistic or masochistic literature, record-
ing or image; penalty for sale, transmutation, or possession.

"Any person who knowingly either sells, lends, gives away, distrib-
utes, shows or transmutes or offers either to sell, lend, give away,
distribute, show or transmute, or has in his possession with intent to
either sell, lend, give away, distribute, show or transmute, or adver-
tise in any manner, or who otherwise knowingly offers for either loan,
gift, sale or distribution, any obscene, lewd, lascivious, filthy or
indecent, sadistic or masochistic book, magazine, pamphlet, newspa-
per, story paper, writing paper, phonograph record, picture, photo-
graph, motion picture film, figure, image, wire or tape recording or
any written, printed or recorded matter of an indecent character,
which is distinguished or characterized by its emphasis on matter
depicting, describing or relating to 'Specified Sexual Activities' or
'Specified Anatomical Areas.' (as defined below in Section 9.305A),
which may or may not require mechanical or other means to be
transmuted into auditory, visual or sensory representation of such
character, shall be guilty of a misdemeanor, and upon conviction shall
be punished as provided in Section 9.306 of this Ordinance.

"For the purpose of this Section, possession of 3 or more identical
copies, or 3 or more articles of any obscene, lewd, lascivious, filthy or

president, manager, and projectionist of the Capri
Theatre—were charged with violating the ordinances by the theatre's showing of "The Collegiates". They were found guilty of violating the
ordinances after a bench trial in the East Detroit
Municipal Court.

On appeal, the Macomb County Circuit Court
ruled that a municipality is without power to
"legislate for itself its own standards as to what is
and what is not obscenity * * * [L]ocal communities shall have the right to determine by local
juries what standards should apply, but these
standards are applied by local juries and courts of
law under prosecution of applicable state law".

The circuit court apparently based this legal
conclusion on its interpretation of United States
Supreme Court obscenity cases.

The people bring this appeal, contending that,

indecent book, magazine, pamphlet, newspaper, story paper, writing
paper, phonograph record, picture drawing, photograph, slide, motion
picture film, figure, image, wire or tape recording, or any written,
printed or recorded matter of an indecent character, which is distinguished or characterized by its emphasis on matter depicting, describing or relating to 'Specified Sexual Activities' or 'Specified Anatomical
Areas.' (as defined below in Section 9.305A), shall be prima facie
evidence of possession with intent to sell, lend, give away, distribute,
show or transmute the thing.

*   *   *

"Section 9.305A Definitions
"(1) 'Specified Sexual Activities' are defined as:
"(a) Human genitals in a state of sexual stimulation or arousal;
"(b) Acts of human masturbation, sexual intercourse, or sodomy;
"(c) Fondling or other erotic touching of human genitals, pubic
region, buttock or female breast.
"(2) 'Specified Anatomical Areas' are defined as:
"(a) Less than completely and opaquely covered:
"(1) Human genitals, pubic region.
"(2) Buttock.
"(3) Female breast below a point immediately above the top of the
areola.
"(b) Human male genitals in a discernibly turgid state, even if
completely and opaquely covered." East Detroit Ordinances, c 129,
§§ 9.301, 9.305A.

because a municipality may enact obscenity ordinances and because these particular ordinances are constitutionally sound, defendants' convictions under the ordinances may stand. Defendants argue that East Detroit lacked the authority to enact the ordinances, and even if authority existed, the ordinances do not pass constitutional muster because of their lack of requisite specificity.

I. *Municipality authority to enact obscenity ordinances.*

A. *Under United States Constitutional Law.*

We find nothing in the U. S. Constitution or in Supreme Court obscenity cases that would prohibit municipalities from enacting criminal obscenity ordinances. In fact, our research indicates that the Supreme Court has given tacit, if not outright, approval of municipal regulation of obscenity.

It is true, as defendants note, that *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973), repeatedly discusses "state" regulation of obscenity:

"[W]e are called on to define the standards which must be used to identify obscene material that a *state* may regulate without infringing the First Amendment as applicable to the States through the Fourteenth Amendment." (Emphasis added.) 413 US at 19–20; 93 S Ct at 2612; 37 L Ed 2d at 428.

"The basic guidelines for the trier of fact must be:

" * * * (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the *applicable state law."* 413 US at 24; 93 S Ct at 2615; 37 L Ed 2d at 431. (Emphasis added.)

However, because the *Miller* case involved the constitutionality of a State of California statute, it is understandable that the Court posed the issue and undertook the analysis with reference to "a

state". Neither *Miller,* nor the subsequent obscenity cases of *Hamling v United States,* 418 US 87; 94 S Ct·2887; 41 L Ed 2d 590 (1974), and *Jenkins v Georgia,* 418 US 153; 94 S Ct 2750; 41 L Ed 2d 642 (1974), raised the precise issue of a municipality's ability to regulate obscenity.

*Hamling* and *Jenkins,* by allowing a juror "to draw on knowledge of the community or vicinage from which he comes in deciding what conclusion 'the average person, applying contemporary community standards' would reach in a given case", 418 US at 105; 94 S Ct at 2901; 41 L Ed 2d at 613, acknowledged that local community mores may be determinative of obscenity. It follows from this recognition of the importance of community standards that municipalities can regulate obscenity without necessarily running afoul of the First Amendment.

A recent Supreme Court case involving First Amendment issues, though not specifically addressing obscenity questions, implicitly suggests that municipal ordinances regulating speech will not be struck down merely because they are municipal ordinances rather than state statutes. *Erznoznik v City of Jacksonville,* 422 US 205, 207 n 3; 95 S Ct 2268, 2272 n 3; 45 L Ed 2d 125, 130 n 3 (1975). For U. S. Constitutional Law purposes, a municipal ordinance may be considered state law. We conclude that there is no absolute prohibition against municipalities regulating obscenity to be found in cases interpreting the U. S. Constitution. See also *Times Film Corp v Chicago,* 365 US 43; 81 S Ct 391; 5 L Ed 2d 403 (1961).

B. *Under Michigan law.*

The City of East Detroit is a home rule city with powers under MCLA 117.4i(9); MSA 5.2082(9) to adopt a charter that provides for:

"the enforcement of all such local, police, sanitary and other regulations as are not in conflict with the general laws."

The home rule statutory scheme[3] also provides. that a city charter may provide:

"For the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns subject to the constitution and general laws of this state." MCLA 117.4j(3); MSA 5.2083(3).

The city's revised charter, c 2, § I, provides that the city may regulate or prevent all things "detrimental to the health, morals, comfort, safety, convenience and welfare of the inhabitants of the city". Pursuant to this charter authority, the city council adopted the aforementioned obscenity ordinances.[4]

We must determine whether obscenity regulation is a "municipal concern". If a municipal concern, we must consider whether the state statutory provisions on obscenity preempt municipal

---

[3] The statutory authority for a home-rule city is in turn derived from Const 1963, art 7, § 22:

"Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section."

[4] See n 2, supra.

regulation. Finally, if there is no preemption, we must decide whether or not there is a conflict between the state statute and the municipal ordinance.

1. *"Municipal concern"*

Both the Michigan Constitution, art 7, § 22, and the home rule statute, MCLA 117.4j(3); MSA 5.2083(3), limit municipal regulatory authority to areas of "municipal concern". As the constitutionality of an ordinance is presumed, *People v Sell*, 310 Mich 305, 314; 17 NW2d 193, 195 (1945), defendants bear the burden of showing that the obscenity ordinances are of no municipal concern in that they bear no real or substantive relation to the public health, morals, safety, or general welfare of the municipality. See *Austin v Older*, 283 Mich 667, 674; 278 NW 727 (1938), and *Kalita v Detroit*, 57 Mich App 696, 703; 226 NW2d 699 (1975). The defendants have not met that burden.

Our review of Michigan case law, and our assessment of the interests a municipality could have in the regulation of obscenity, convinces us that obscenity is a subject of "municipal concern".

Municipal ordinances regulating morals have previously been upheld as municipal concerns. *E.g., Watnick v Detroit*, 365 Mich 600; 113 NW2d 876 (1962) (Sunday closing laws). See also *People v Pennock*, 294 Mich 578; 293 NW 759 (1940).

We believe that a social problem does not lose its character as a municipal concern merely because the state is also interested in addressing the issue. It may be that statewide regulation more readily solves a problem and that a state has a greater interest in a uniform treatment of the problem; these factors are to be analyzed in determining if the state has preempted the area or if there is an impermissible state-municipality con-

flict. These factors do not detract from the issue's status as a municipal concern.

Because particular communities may desire more rigorous or more lax regulations of obscenity, or merely because municipalities are legitimately interested in the alleged evils caused by obscenity, obscenity is a municipal concern. Of course, the validity of local ordinances must be tested under other principles of law: state preemption, impermissible conflict with statutes, and infringement of free speech rights. The existence of these other legal doctrines does not mean that obscenity does not concern local governments. We have no doubt that obscenity is a municipal concern. See *Soof v Highland Park,* 30 Mich App 400, 406; 186 NW2d 361 (1971).

2. *State preemption*

Another panel of this Court has recently concluded:

"Neither the state criminal obscenity statutes, MCLA 750.343a *et seq.;* MSA 28.575(1) *et seq.,* nor the civil obscenity statute, MCLA 600.2938; MSA 27A.2938, expressly preempt the obscenity field. If either statute or the statutes taken together regulate every area of the obscenity field, then we may say that the state has preempted the field." *Suits v Meridian Twp,* 60 Mich App 347, 350; 230 NW2d 426 (1975).

The *Suits* case may be distinguishable in that the Meridian Township ordinance in that case regulated "public display" of offensive sexually explicit material, a subject not covered by the state criminal obscenity statutes. 60 Mich App at 350. In the present case, the challenged ordinance covers a topic—display of motion picture film—explicitly covered in the statute MCLA 750.343a; MSA 28.575(1). The preemption argument may be

stronger here because of this overlap in the coverage of the statute and the ordinance.

Nonetheless, despite this overlap that could distinguish the *Suits* holding, we do not believe that the Legislature has preempted the regulation of obscenity by passage of the obscenity statutes. We read this conclusion after consideration of previous preemption cases.

In *Walsh v River Rouge*, 385 Mich 623; 189 NW2d 318 (1971), our Supreme Court found that a municipality was without power to enact an ordinance giving emergency powers to a mayor because the Legislature had given the governor the exclusive authority to declare a state of emergency. The Court ruled that the statute preempted the field. Present in the *Walsh* case, and notably absent here, was a clear legislative history that left no doubt about the Legislature's intentions. Moreover, as the statute itself provided for grants of emergency power by the governor to the mayors, the express language of the statute supported a finding of preemptive legislative intent.

*Noey v Saginaw*, 271 Mich 595; 261 NW 88 (1935), found preemption of the control of alcoholic beverage traffic and voided a municipal ordinance attempting to regulate liquor licenses. The language of the statute establishing a liquor control commission indicated that the commission was to have "complete control" and the "sole right, power and duty to control". 271 Mich at 598. There is no such clear and unequivocal statement of legislative intent in the state obscenity statutes.[5]

*Miller v Fabius Township Board*, 366 Mich 250;

---

[5] Moreover, it is possible that the Court in *Noey v Saginaw*, 271 Mich 595; 261 NW 88 (1935), misread the legislative intent. Subsequent cases suggest that liquor license regulation is peculiarly a concern of local communities. *Bundo v Walled Lake*, 395 Mich 679; 238 NW2d 154 (1976).

114 NW2d 205 (1962), found no statutory preemption of the field of water skiing because the Legislature did not expressly state an intent to preempt the field. We repeat that an express legislative statement of preemption is absent in the obscenity statutes. MCLA 750.343a *et seq.;* MSA 28.575(1) *et seq.* We therefore conclude that municipalities are not statutorily preempted from regulating obscenity.

As was stated in *Suits, supra:*

"We decline the preemption argument and suggest that plaintiffs' policy argument that preemption should occur in this area of the law is one for legislative consideration." 60 Mich App at 350.

3. *Conflict between state statute and municipal ordinance*

Although we find no statutory preemption of obscenity regulation, we could strike down the municipal ordinance if we were to conclude that the ordinance and the statute impermissibly conflict. *Miller v Fabius Township Board, supra,* 366 Mich at 258. See also *Detroit v Recorder's Court Judge,* 56 Mich App 224, 227; 223 NW2d 722 (1974). We are unable to determine if there is a conflict between MCLA 750.343a; MSA 28.575(1) and the municipal ordinance because our Supreme Court in *People v Bloss,* 394 Mich 79; 228 NW2d 384 (1975), has stated:

"We are persuaded that defendant's conviction cannot stand for the reason that at the time he did the act complained of this Court had not construed the obscenity statutes (as permitted in *Miller)* to proscribe such conduct.

* * *

"We are divided as to whether such statutes can
properly be construed by us without further legislative
expression as proscribing the dissemination of 'obscene'
material to consenting adults. See Const 1963, art 1,
§ 5." 394 Mich at 81 (footnote omitted).

In short, after *Bloss* we cannot be certain what
MCLA 750.343a *et seq.;* MSA 28.575(1) *et seq.,*
prohibits or permits. *Cf., Kent County Prosecutor
v Robert Emmett Goodrich Corp,* 53 Mich App 267;
218 NW2d 771 (1974). We can therefore make no
determination of a conflict between the statute
and the ordinance.

We suspect that even if we knew what the
statute specifically prohibited, we would have some
difficulty in determining if there is a conflict.[6] The
question of conflict is "difficult of solution, and
cannot be determined by any fixed rule. Each
particular case must be determined as it arises".
*National Amusement Co v Johnson,* 270 Mich 613,
616; 259 NW 342, 343 (1935), citing 43 CJ 218. We
are saved from having to determine if there is a
conflict by the *Bloss* case. Given no clear expres-
sion defining the scope of the state obscenity stat-
ute, we are unable to find a conflict.

Because we conclude that the City of East De-
troit can consider obscenity a municipal concern,
because the state statutes have not preempted
obscenity regulation, and because there is no con-
flict in the East Detroit ordinance and the state

---

[6] The specific difficulty we envision is assessing the conflict between
a statute that very narrowly defines obscenity and an ordinance that
contains a broader definition while still complying with *Miller v
California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973). Is there a
conflict if the municipality prohibits what a statute does not expressly
permit but only declines to prohibit? *C.f., People v Drost,* 353 Mich
691; 91 NW2d 851 (1958). Because we deal with First Amendment
issues, is the conflict analysis any different than that used to assess
conflicts in fields such as water skiing regulation? *Miller v Fabius
Township Board,* 366 Mich 250; 114 NW2d 205 (1962).

statutes, we must examine the validity of the ordinance under the First Amendment.

II. *Ordinance validity under First Amendment.*

We have no doubt that parts of the ordinance under which defendants were tried and convicted are invalid while other parts are clearly valid.[7] The ordinance, although not wanting in specificity, exceeds the "substantive constitutional limitations * * * on the type of material subject to * * * a determination [of what a jury might find patently offensive]". *Jenkins v Georgia,* 418 US 153, 160–161; 94 S Ct 2750, 2755; 41 L Ed 2d 642, 650 (1974).

The ordinance, by prohibiting, among other things,

"(a) Less than completely and opaquely covered:

* * *

"(2) Buttock.

"(3) Female breast below a point immediately above the top of the areola."

seems to go too far.[8] They attempt to prohibit nudity, whereas "nudity alone is not enough to make material legally obscene". *Jenkins, supra,* 418 US at 161; 94 S Ct at 2755; 41 L Ed 2d at 650.

Because the above examples detailed in the ordinance do not necessarily constitute patently offensive, hardcore sexual conduct, the convictions must fall, for:

---

[7] Subsequent amendments to the ordinance cannot be considered in assessing the constitutionality of defendants' convictions under the ordinances extant at their arrests. *See* Const 1963, art 1, § 10, and *People v Marshall,* 362 Mich 170, 174; 106 NW2d 842 (1961).

[8] Our condemnation of these particular provisions in the ordinances is not to be considered approval of the remainder of the ordinances. We emphasize the quoted prohibitions only to illustrate the furthest reaches of the ordinances.

"there is a limit beyond which neither legislative draftsmen nor juries may go in concluding that particular material is 'patently offensive' within the meaning of the obscenity test set forth in the *Miller* cases." *Hamling, supra,* 418 US at 114; 94 S Ct at 2906; 41 L Ed 2d at 619.

In short, while this ordinance is sufficiently specific to give fair notice of proscribed material, certain specific prohibitions are constitutionally impermissible because they condemn material that is not patently offensive.

The defendants' convictions in the East Detroit Municipal Court may have been based on those parts of the ordinance that are most clearly invalid. We have no trial court opinion that indicates what particular sections of the ordinance were violated. Because at least parts of the ordinance condemn constitutionally protected speech, and because we are unable to determine which sections the trial judge considered, we affirm the Macomb County Circuit Court's reversal of defendants' convictions.

M. J. KELLY, J., concurred.

DANHOF, P. J. *(dissenting).* The circuit court judge rested his decision to quash the complaint and warrant upon a single ground:

"The Court does agree with the argument of the Defendant that local communities shall have the right to determine by local juries what standards shall apply, but that these standards are applied by local juries and courts of law under prosecution of applicable state law.

"It is the Opinion of this Court that the standards by which obscenity is to be judged in this state or in any other state must be set by the Legislature of that state. It is perfectly obvious that local juries, in trying obscen-

ity matters, will apply what appears to them to be their own standards in the matter, but the jury's viewpoint of a community standard and a standard set by the State Legislature may or may not be the same."

So far as the majority addresses this issue I adhere to their opinion and agree that the circuit judge erred in his conclusion. Had the majority gone no further in their analysis, reversal would have been mandated. However, they elect to address the second issue, the constitutionality of the ordinance under which the defendants were convicted. As it is presumed that the trial court will follow the law, a matter not decided by the trial court is not properly before this Court. *Shelby Mutual Insurance Co v Grand Rapids,* 6 Mich App 95, 98–99; 148 NW2d 260 (1967), *Swain v Kayko,* 44 Mich App 496, 504; 205 NW2d 621 (1973). Furthermore, since the ordinance in question has since been substantially amended, I find no compelling reason to preserve for its precedential value our assessment of its constitutionality.

I vote to reverse and remand to circuit court for further proceedings.