CURTIS, J.
The defendant was tried in the Municipal Court upon four counts charging respectively “possession” “lending” or “giving” of an obscene film in violation of the city ordinance and “vagrancy.” The trial court struck the count of “possession” and the jury found the defendant not guilty of “lending” such a film and of “vagrancy” but convicted the defendant of “giving” such a film. It is from this conviction that the defendant appeals.
During the trial, the defendant admitted the obscene nature of the films and objected to their being shown to the jury, contending, that in view of his admission, obscenity was no longer an issue and that the films were not only immaterial but highly inflammatory. The court allowed a portion of the films to be shown to the jury over defendant’s objection, which the defendant now contends was error.
We think that the showing of the film to the jury was necessary for several reasons, but it was especially pertinent in view, of the defendant’s defense of justification. The defendant had testified in his own behalf that the films were placed in transit to a medical technologist at the Ince Memorial Hospital for use in the hospital in experimentation upon and treating *891 sexual psychopaths. It is this defense which we think raises the vital issue presented by this appeal.
The defense submitted a series of instructions stating in essence that the giving or lending of obscene material directed to medical personnel for medical and scientific purposes was a justifiable and lawful use. The court refused these instructions and in their place gave the following: “If this film is obscene in itself as has been admitted by defendant, its giving or lending with the intent that it be used for experimentation on hospitalized perverts would not be made lawful merely by such intent. You may believe that the law should make such an exception, but I advise you that it does not. ...”
Although we are not prepared to approve the actual instructions submitted by the defendant nor are we willing to disapprove of the instruction given by the court so far as it goes, in our opinion the jury was left without any proper instruction upon the issue raised by the defense and the court’s instruction, under the circumstances, was misleading. Under this instruction, the jury might well have believed that if the material were found to be obscene and further found that the defendant “had given” it, they should find the defendant guilty without regard to the purposes for which the films had been given. This, we think is not the law. Certainly there are some circumstances in which a lawful use may be made of material which is clearly obscene by average standards. The deputy sheriff, who handed the film to the deputy district attorney who tried this case, did not violate the spirit nor the intent of the ordinance. Photos taken by a private detective of an unfaithful spouse, though obscene by normal standards, can lawfully be used in the preparation and trial of a divorce action. The reports of psychiatrists, especially as related to sexual psychopaths, often report and vividly describe obscene acts, and yet no one would contend that the use of such reports was in any way unlawful, and any ordinance seeking to prohibit the use of such material would undoubtedly violate constitutional guarantees.
We are not greatly assisted by the latest pronouncement of the Supreme Court in Roth v. United States (1957) 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498], where it was held that the proper test of obscenity is whether the material taken as a whole appeals to the prurient interests of the average person, applying contemporary community standards. But Mr. Justice Warren, writing a concurring opinion, apparently recognized the difficulty of applying this rule in all eases. He *892 said: “The line dividing the salacious or pornographic from literature or science is not straight and unwavering. Present laws depend largely upon the effect that the materials may have upon those who receive them. It is manifest that the same object may have a different impact, varying according to the part of the community it reached. But there is more to these eases. It is not the book which is on trial; it is a person. The conduct of the defendant is the central issue, not the obscenity of a book or picture. The nature of the materials is, of course, relevant as an attribute of the defendant’s conduct, but the materials are thus placed in context from which they draw color and character. A wholly different result might be reached in a different setting.”
Upon what theory, then, is the use of medical or scientific material lawful, though the material is obscene by the “average person” test?
Although we find no case in this state which deals with the precise point, it is interesting to note that, although it comes too late to be applicable here, the Legislature did in 1961 amend the state obscenity statute by adding to the Penal Code, section 311.8 which provides: “It shall be a defense in any prosecution for a violation of this chapter that the act charged was committed in aid of legitimate scientific or educational purposes.” Other courts, however, have been confronted with the problem and have held almost uniformly that such material may be used in proper instances, but they have reached this result with such a great variety of reasoning that the law on the subject is in utter confusion.
The precise point, however, was raised and decided in the case of United States v. 31 Photos (1957) 156 F.Supp. 350, in which the court reviewed cases in many jurisdictions where the matter had been decided and so clearly and logically set forth what we believe to be the true rule that we would adopt not only its conclusions but its reasoning.
This was an action to forfeit certain alleged obscene material under a United States statute prohibiting importation of immoral and obscene material. The Institute of Sex Research, Inc., of the.University of Indiana sought to import photos, books and other, articles for the sole purpose of furthering the department’s study of human sexual behavior, and such material was for the sole use of the staff or qualified scholars engaged in bona fide research. The material was not to be available to the general public, and it was assumed that there was no reasonable probability that it would appeal to the *893 prurient interests of persons who would have access to it. The court held that the matter was not obscene within the statute. The court says that in the first place, material is obscene only as it makes a certain appeal to the viewer, i.e., it must appeal to his prurient interests. Although the Both case has stated that the test of obscenity is its appeal to the average person, the court said: “. . . it must be borne in mind that the cases applying the standard in this manner do so in regard to material which is to be distributed to the public at large. I believe, however, that the more inclusive statement of the definition is that which judges the material by its appeal to ‘all those whom it is likely to reach.’ United States v. Levine (2 Cir. 1936) 83 F.2d 156, 157. Viewed in this light, the ‘average man’ test is but a particular application of the rule, often found in the cases only because the cases often deal with material which is distributed to the public at large. ... I find two cases which have described material as being ‘ obscene per se.’ But I cannot understand this to mean that the material was held to have a prurient appeal without reference to any beholder. ... It should be obvious that obscenity must be judged by the material’s appeal to somebody. For what is obscenity to one person is but a subject of scientific inquiry to another. And, of course, the substitution, required by Roth, of the ‘average person’ test (in cases of widespread distribution) for the test according to the effect upon one of particular susceptibility, is a matter of determining the person according to whom the appeal of the material is to be judged. Once it is admitted that the material’s appeal to some person, or group of persons, must be used as a standard by which to gauge obscenity, I believe that the cases teach that, in a case such as this, the appeal to be probed is that to the people for whom, and for whom alone, the material will be available. It is possible, instead of holding that the material is not obscene in the hands of the persons who will have access to it, to speak of a conditional privilege in favor of scientists and scholars, to import material which would be obscene in the hands of the average person. I find it unnecessary to choose between these theories. In the first place, under either theory the material may not be excluded in this case. Moreover, I believe that the two theories are but opposite sides of one coin. For it is the importer’s scientific interest in the material which leads to the conditional privilege, and it is this same interest which requires the holding that the appeal of the material to *894 the scientist is not to his prurient interest and that, therefore, the material is not obscene as to him. ’ ’
It would appear, therefore, that regardless of which theory we follow, the true rule is that material, although admittedly obscene by the “average person” test may be lawfully “given” when in good faith it is to be used exclusively within a professional group pursuing legitimate professional purposes where the material is germane to such purposes, where the material is not likely to fall into the hands of others, and where it is not probable that the material will appeal to the prurient interests of the average person within the group. In this ease there is some evidence from which the jury might reasonably have found that the defendant’s use of the films was lawful. Whether such evidence was to be believed or not was a question for the jury, and it should have been properly instructed on this issue.
We find the fact that the defendant, during the trial, admitted the obscenity of the films, no obstacle to our conclusion, for the nature and extent of such an admission can best be understood by considering such admission in the light of the foregoing discussion. Defendant’s counsel stated as follows: “My position is that the films are irrelevant for the reason that the obscene nature of the film, lewd and lascivious character thereof, are admitted unequivocally. The only issue in this ease remaining is whether or not the act was performed and whether or not it was in fact justified, and by ‘the act’ I mean the lending or giving of the lewd or obscene film.” Reporter’s transcript, page 270.
■ Whatever degree of obscenity the defendant intended thereby to admit, he obviously did not intend to abandon the defense of justification which he had urged throughout the trial and in fact urged in the same breath in which the admission was made. If there be any ambiguity in this statement, it should be resolved in favor of permitting him to maintain his defense.
There have been many other points raised and ably argued on this appeal, but since the foregoing discussion is determinative, we think it unnecessary to discuss or decide the other issues. We think it well, however, to point out that in the event of a new trial there may well be other considerations with which the parties have not so far become concerned.
In the ease of In re Lane, *(Cal.) 18 Cal.Rptr. 33, 367 *895 P.2d 673 (now under consideration by the Supreme Court upon a petition for rehearing) it was held that the state had preempted the field of regulating sexual activity and prostitution and, consequently, a city ordinance imposing additional requirements was invalid. It would appear that the state, likewise, has preempted the field of prohibiting obscene exhibits, books, prints, etc., by section 311 of the Penal Code, the introductory words of which are: “Every person who wilfully and lewdly (emphasis ours) . . then follow 5 subsections enumerating the prohibited acts including “. . . distributes . . . any obscene or indecent . . . designs,” etc. To be an offense under this statute, the acts prohibited must be done “wilfully and lewdly.” The city ordinance with which this appeal is concerned does not contain either of these two elements. Its introductory words are: “No person shall show . . . etc.” By not requiring the act to be done “wilfully and lewdly” the scope of the ordinance would exceed that of the state law and under the rule laid down in the Lane ease, the ordinance would be invalid. As a matter of statutory construction and in an effort to preserve the ordinance, these two elements might be read into it as has been done by the courts of some states (see State v. Oman (1961) - Minn. - [110 N.W.2d 514]). But even though the ordinance might in this way be upheld, the complaint herein charges the defendant with “wilfully and unlawfully” violating the ordinance and the court, in instructing the jury on the nature of the offense, also used the words “wilfully” and “unlawfully.” In neither instance was the word “lewdly” included as one of the elements of the offense. It would appear, therefore, that if the rule set down in the Lane ease is upheld, at least the complaint and the court’s instructions would be fatally defective.
Basing our decision, however, upon the rule enunciated in the case of United States v. 31 Photos (supra), the judgment of conviction will be reversed and the matter remanded for new trial.
Mitchell, P. J., and Hilliard, J., concurred.

A rehearing was granted on January 17, 1962. The final opinon of that court is reported in 58 Cal.2d- [22 Cal.Rptr. 857, 372 P.2d 897].