122 N.J. Super. 296 (1973)
300 A.2d 191
DIMOR, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF, AND PASSAIC CINEMA, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND S.M.H. AMUSEMENT CO., A CORPORATION OF THE STATE OF NEW JERSEY, INTERVENORS,
v.
CITY OF PASSAIC, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Argued January 19, 1973.
Decided January 22, 1973.
*298 Mr. Richard K. Rosenberg argued the cause for plaintiff (Messrs. Heller & Laiks, attorneys).
Mr. H. Ronald Levine argued the cause for intervenor Passaic Cinema, Inc. (Mr. Robert M. Kronman, attorney).
Mr. Hymen Siegendorf argued the cause for intervenor S.M.H. Amusement Co. (Messrs. Siegendorf, Michaelis & Miller, attorneys).
Mr. Otto F. Blazsek argued the cause for defendant (Mr. Joseph Scancarella, City Attorney).
DOAN, J.C.C., Temporarily Assigned.
On January 6, 1972 defendant City of Passaic through its mayor and council, adopted ordinance No. 135-72 which set forth certain licensing *299 requirements with respect to motion picture theatres. Its effective date was January 26, 1972. Paragraph 4 of the ordinance provides:
It shall be unlawful for any person conducting a theatre or moving picture show to exhibit immoral pictures or shows of any character, whose dominant theme appeals to the prurient interest, is patently offensive, affronts contemporary community standards relating to sexual matters and is without redeeming social value.
The ordinance provides for a penalty of up to a $200 fine a day for each day that such a motion picture is shown.
Plaintiff Dimor, Inc., and intervenors Passaic Cinema, Inc. and S.M.H. Amusement Co., are owners respectively of the Montauk, Capital and Central Theatres, establishments regularly in the business of showing motion pictures in the City of Passaic. This action was instituted under the Declaratory Judgment Act (N.J.S.A. 2A:16-52) whereby plaintiff and intervenors seek to have said paragraph 4 declared illegal and void as being preempted by the statute dealing with obscenity, N.J.S.A. 2A:115-1.1 et seq., which was extant at the time the ordinance was adopted. That statute defined the term "obscene" as follows:
(a) The word "obscene" wherever it appears in the chapter to which this act is a supplement shall mean that which to the average person, applying contemporary community standards, when considered as a whole, has as its dominant theme or purpose an appeal to prurient interest.
(b) Any book, publication, picture, writing, record or other mechanical or electronic audio or visual reproduction or other material shall be obscene within the meaning of subsection (a) hereof if it is established that:
(1) The dominant theme of the material taken as a whole appeals to a prurient interest;
(2) The material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and
(3) The material is utterly without redeeming social value.
The penalty for uttering or exposing obscene literature or pictures was made a misdemeanor by N.J.S.A. 2A:115-2.
*300 The issue presented here for consideration is essentially whether N.J.S.A. 2A:115-1.1 et seq. declares a state policy which preempts any competing municipal action under the Home Rule Act, N.J.S.A. 40:48-1 et seq.; whether the statute at the time of the enactment of this ordinance was so pervasive so as to clearly preempt the field and thus render the attacked portion of the ordinance ultra vires and void.
Whether a given field has been preempted by the Legislature is strictly a question of fact. State v. Pinkos, 117 N.J. Super. 104, 106 (App. Div. 1971).
It should be noted that the above-cited statutory definition of "obscene" was amended by L. 1971, c. 449, § 3, effective February 16, 1972, whereby the requirement that the material be "utterly without redeeming social value" was eliminated. This amended statute (N.J.S.A. 2A:115-1.1) was subsequently declared unconstitutional in Cine-Com Theatres Eastern States, Inc. v. Lordi, 351 F. Supp. 42 (D.N.J. filed November 20, 1972). This decision of the U.S. District Court is not binding on us, and it is one with which I do not agree. State v. Speciale, 96 N.J. Super. 1, 7 (App. Div. 1967). Even if it were, it would leave undisturbed the remaining provisions of N.J.S.A. 2A:115  N.J.S.A. 2A:115-1.11. Without regard to the determination made by the Federal District Court with respect to the amended statute, consideration must initially be given, in this proceeding, to the relation of the ordinance to the statutory authority existing at the time of its enactment in deciding whether a preemption had occurred. This must be before any constitutional question may be reached.
The basic statutory authority for a municipality to enact an ordinance such as in this case, is found in the omnibus police powers provisions, N.J.S.A. 40:48-2 which provides:
Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and *301 proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.
This power, however, is a limited delegated power. Its exercise is, of course, subject to the control of the state statutes. As noted by Chief Justice Weintraub in Kennedy v. Newark, 29 N.J. 178 (1959):
It is fundamental that in the exercise of delegated power a municipality may not legislate in conflict with state statutes. [Citations omitted] [At 186]
and,
[However,] before it can be said that the police power delegated to local government must remain inert, it must be clear that the Legislature intended to occupy the field or declared a policy at war with the decision made by local government. The delegated power may not be restrained upon the basis of speculation or dubious inference. [At 186-187]
In a more expansive discussion of this area of conflict and preemption, Chief Justice Weintraub, in the case of Summer v. Teaneck, 53 N.J. 548 (1969), stated:
A municipality may not contradict a policy the Legislature establishes. * * * Hence an ordinance will fall if it permits what a statute expressly forbids or forbids what a statute expressly authorizes. Even absent such evident conflict, a municipality may be unable to exercise a power it would otherwise have if the Legislature has preempted the field. * * * It is not enough that the Legislature has legislated upon the subject, for the question is whether the Legislature intended its action to preclude the exercise of the delegated police power. Masters-Jersey, Inc. v. Mayor and General Council of Borough of Paramus, 32 N.J. 296 (1960). * * * The ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said with confidence that the Legislature intended to immobilize the municipalities from dealing with local aspects otherwise within their power to act. [At 554-555; italics provided]
*302 See also, Ringlieb v. Parsippany-Troy Hills Tp. 59 N.J. 348 (1971); State v. Ulesky, 54 N.J. 26 (1969), and Chester Tp. v. Panicucci, 116 N.J. Super. 229 (App. Div. 1971).
It is, therefore, plain that even if there is no apparent conflict the court must still decide whether the State has preempted the field. If, upon an examination of the totality of the subject matter, it is concluded that the Legislature intended to solely occupy the field, it would then have preempted the same and the ordinance of necessity would be ultra vires and invalid. As noted in the recent case of Coast Cigarettes Sales, Inc. v. Mayor, etc., Long Branch, 121 N.J. Super. 439 (Law Div., 1972), the municipality's powers:
* * * relate to matters of local concern which may be determined to be necessary and proper for the good and welfare of local inhabitants. They do not extend to matters involving state policy or in the realm of affairs of general public interest and applicability. The needs of such matters inherently in need of uniform treatment do not vary locally and municipal regulation thereof would not be useful and might, by diverse treatment, cause substantial harm. [At 445; citations omitted]
It is clear that the matter of obscenity must be governed by a uniform mode of treatment. The affront against public morals, although of necessity a matter of local concern, is predominantly within the domain of the State. It must be so. State v. Hudson County News Co., 41 N.J. 247, 265-266 (1963). This philosophy is evidenced by an examination of the Legislative findings of the amended statute, L. 1971, c. 449, § 2, effective February 16, 1972, and L. 1971, c. 446, § 1, effective February 16, 1972, which refer, among other things, to the "effective legal action against obscene matter" and the availability of obscene material to "State residents." Although both of these references are to the amended act, they quite clearly demonstrate that the Legislature intended even in its prior legislation, under consideration here, that the statutory manner of treatment of obscene matter was to be the sole uniform mode of treatment. Paragraph 4 of the Passaic ordinance and the state statute *303 concededly are substantially identical in their definition of "obscene" material. While the ordinance is specifically limited to the exhibition of moving pictures, the statute is broader in its treatment of prohibited acts. But there is little doubt, and the court finds, that the statute does encompass the ordinance and that the State has preempted the field. To permit each municipality to enact its own laws and regulations in this area would be in direct opposition to the legislative mandate.
The subject of obscenity is one of "general public interest and applicability" which necessitated "uniform treatment." Coast Cigarettes Sales, Inc. v. Mayor, etc., Long Branch, supra. Surveying all the interests involved it is quite clear that "the Legislature intended to immobilize the municipalities from dealing with local aspects" of the subject matter of obscenity. Summer v. Teaneck, supra.
In Whitney v. Municipal Court, 58 Cal.2d 907, 27 Cal. Rptr. 16, 377 P.2d 80 (Sup. Ct. 1962), where it was evident that the Legislature had demonstrated an intent to occupy the field, the obscenity ordinance was struck down. Cf. In re Lane, Cal., 18 Cal. Rptr. 33, 367 P.2d 673 (1961); People v. Marler, 199 Cal. App.2d Supp. 889, 18 Cal. Rptr. 923 (App. Div. 1962).
Paragraph 4 of ordinance No. 135-72 of the City of Passaic is adjudged ultra vires and void.