## PEOPLE v LLEWELLYN

### (CITY OF EAST DETROIT v LLEWELLYN)

Docket No. 56872. Argued January 5, 1977 (Calendar No. 6).—Decided
October 6, 1977. Rehearing denied 402 Mich 954. Certiorari
denied by the Supreme Court of the United States May 1, 1978.

James D. Llewellyn and Las Vegas Cinema, Inc., were convicted
by a jury in Municipal Court of East Detroit, and, on appeal de
novo, by a jury in Macomb Circuit Court, Walter P. Cynar, J.,
of violating the obscenity ordinance of the City of East Detroit.
The defendants were charged with exhibiting two motion pic-
tures, "The Devil in Miss Jones", and "Deep Throat". The
defendants challenge the constitutionality of the city's ordi-
nance as being pre-empted by state obscenity statutes. The
Court of Appeals, J. H. Gillis, P. J., and R. M. Maher and
O'Hara, JJ., denied leave to appeal (Docket Nos. 22465, 22466).
Defendants appeal. *Held:*

1. A municipality's power to adopt resolutions and ordinances
is subject to the Constitution and law. The dispositive issue in
this case is whether the Legislature has pre-empted the regula-
tion of the field by statutes governing standards of prohibited
obscenity.

2. A municipality is precluded from enacting an ordinance if
the ordinance is in direct conflict with the statutory scheme, or
the statutory scheme occupies the field of regulation which the
municipality seeks to enter, to the exclusion of the ordinance,
even where there is no direct conflict between the two schemes
of regulation.

3. The determination that the state has pre-empted the field

REFERENCES FOR POINTS IN HEADNOTES
[1–6, 8, 10–15] 56 Am Jur 2d, Municipal Corporations §§ 361–397.
[5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 343, 345, 365, 366.
[7] 21 Am Jur 2d, Criminal Law § 17.
Indefiniteness of language as affecting validity of criminal legisla-
tion or judicial definition of common-law crime—Supreme Court
Cases. 16 L Ed 2d 1231.
[9] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions § 393 *et seq.*

of regulation which a city seeks to enter is made under certain guidelines: (1) Where state law expressly provides that the state's authority to regulate in a specified area of the law is exclusive, there is pre-emption. (2) Pre-emption may be implied upon an examination of legislative history. (3) The pervasiveness of the state regulatory scheme is a factor which should be considered as evidence of pre-emption. (4) The nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest. However, where the nature of the regulated subject matter calls for regulation adapted to local conditions and the local regulation does not interfere with the state scheme, supplementary local regulation is generally not prevented.

4. The present statute replaces, with a detailed five-section framework intended to define and regulate obscenity, a much simpler predecessor. The breadth and detail of the statutory scheme provides an indication that the Legislature has pre-empted the definition and deterrence of criminal obscenity, at least to the exclusion of an ordinance which seeks to establish its own definition and test for obscenity, to modify the state standards for a prima facie case of the prohibited conduct, and to alter the punishment prescribed by the state.

5. The definition and prohibition of obscenity offenses is clearly an area of the law which demands uniform, statewide treatment. If each locality were allowed to establish its own definition of obscenity, a great deal of uncertainty and confusion would be created which would make both the scope of the individual right of free expression and the permissible prohibition of obscenity impossible to determine. Such a system would threaten important individual rights, and undermine efficiency in the control of obscenity through the resultant confusion and provocation of endless appeals. The uncertainty created by local definitions of obscenity would effectively chill the right to free expression, and raise serious due-process problems because of a limited opportunity to discover the nature of prohibited conduct in a statewide or national distribution of materials.

·6. The state has pre-empted the field of regulation which the City of East Detroit seeks to enter with its anti-obscenity ordinance; therefore, the ordinance is unconstitutional. Statewide regulation of obscenity is not only the fairest, but also the most effective means of regulating obscenity. However, a municipality is not prevented from enacting ordinances outside the field of regulation occupied by the statute, such as local zoning ordinances governing the location of establishments

featuring "adult entertainment" not defined in terms of obscenity.

The defendants' convictions are reversed.

Justice Ryan, joined by Justices Coleman and Fitzgerald, dissenting, wrote that he was persuaded that the state has not pre-empted the field of obscenity legislation. It is well-settled that the regulation of activities affecting public morals and welfare is a proper municipal concern. Incontrovertibly, obscenity is a matter germane to public morals and welfare. The principle of pre-emption is that when general law on a specific subject occupies a particular field so completely that any local ordinances seeking to regulate conduct in that field will necessarily conflict because of inconsistency between the two, the ordinance must give way to the general law. Merely because the state has entered into the field of obscenity regulation is no justification for the inference that local regulation will necessarily conflict. This Court has always required an express showing of the Legislature's intent to exclusively occupy the field before invalidating an ordinance on pre-emptive grounds. The language of the statute in no sense expresses or implies an intent to occupy the field of obscenity regulation to the exclusion of local communities. Also, the statute is not sufficiently comprehensive to suggest a legislative intent to pre-empt the field. The ordinance forbids nothing the statute permits and permits nothing the statute forbids. It is within the province of local authorities to further protect their legitimate interests in the field of obscenity regulation through the enactment of local ordinances prohibiting the dissemination of obscene material to consenting adults because state law has neither expressly nor by reasonable inference permitted such dissemination. The fact that a subject is one which logically lends itself to statewide uniform regulation or even demands it does not justify the conclusion that such legislation has been enacted or, if enacted, is in conflict with local ordinances on the subject. Whether the regulation of obscenity demands uniform statewide treatment is a judgment for the Legislature to make, not the judiciary.

OPINION OF THE COURT

1. OBSCENITY—MUNICIPAL CORPORATIONS—ORDINANCES—STATUTES—
PRE-EMPTION.

A city ordinance governing the sale, transmutation, and possession of obscene materials is unconstitutional, because of pre-emption by the comprehensive coverage of the field of the state statutory scheme and the need for a uniform, statewide definition of criminal obscenity offenses for purposes of protecting

free speech and effectively deterring obscenity (MCL 750.343a *et seq.;* MSA 28.575[1] *et seq.;* East Detroit ordinances, title IX, ch 129, §§ 9.301, 9.302, 9.303, 9.305).

2. MUNICIPAL CORPORATIONS—ORDINANCES—CONSTITUTIONAL LAW.

A municipality's power to adopt resolutions and ordinances relating to municipal concerns is subject to the Constitution and the law (Const 1963, art 7, § 22; MCL 117.4j[3]; MSA 5.2083[3]).

3. MUNICIPAL CORPORATIONS—ORDINANCES—STATUTES—CONSTITUTIONAL LAW—PRE-EMPTION.

A municipality is precluded from enacting an ordinance if the ordinance is in direct conflict with the statutory scheme, or if the statutory scheme occupies the field of regulation which the municipality seeks to enter even where there is no direct conflict between the two schemes of regulation (Const 1963, art 7, § 22; MCL 117.4j[3]; MSA 5.2083[3]).

4. MUNICIPAL CORPORATIONS—ORDINANCES—STATUTES—CONSTITUTIONAL LAW—PRE-EMPTION.

The determination that the state has pre-empted a field of regulation which a city seeks to enter with an ordinance is made according to certain guidelines: (1) where state law expressly provides that the state's authority to regulate is to be exclusive, there is pre-emption; (2) pre-emption may be implied upon an examination of legislative history; (3) pervasiveness of the state regulatory scheme is a factor which should be considered as evidence of pre-emption; (4) the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest (Const 1963, art 7, § 22; MCL 117.4j[3]; MSA 5.2083[3]).

5. MUNICIPAL CORPORATIONS—ORDINANCES—STATUTES—CONSTITUTIONAL LAW—PRE-EMPTION.

Supplementary local regulation is generally not preempted by a statute where the nature of the regulated subject matter calls for regulation adapted to local conditions, and local regulation does not interfere with the state regulatory scheme (Const 1963, art 7, § 22; MCL 117.4j[3]; MSA 5.2083[3]).

6. OBSCENITY—STATUTES—PRE-EMPTION.

The definition and prohibition of obscenity offenses is an area of the law which demands uniform, statewide treatment (MCL 750.343a *et seq.;* MSA 28.575[1] *et seq.*).

7. CRIMINAL LAW—ELEMENTS OF CRIME—DUE PROCESS.

Penal laws must establish with reasonable certainty the elements

of an offense so that all persons subject to their penalties may know what acts it is their duty to avoid.

8. OBSCENITY—MUNICIPAL CORPORATIONS—ORDINANCES—CONSTITU-TIONAL LAW—PRE-EMPTION.

A municipality is not prevented from enacting ordinances outside the field of regulation occupied by the statutory scheme governing criminal obscenity, for example a local zoning ordinance governing the location of establishments featuring "adult entertainment" not defined in terms of obscenity (Const 1963, art 7, § 22; MCL 117.4j[3], 750.343a *et seq.;* MSA 5.2083[3], 28.575[1] *et seq.).*

DISSENTING OPINION BY RYAN, J.

COLEMAN and FITZGERALD, JJ.

9. OBSCENITY—MUNICIPAL CORPORATIONS—ORDINANCES.

*The regulation of activities affecting public morals and welfare is a "proper municipal" concern, and obscenity is a matter germane to public morals and welfare; therefore, a home rule city has the authority to adopt a city charter provision or an ordinance concerning obscenity (Const 1963, art 7, § 22; MCL 117.4i[9], 117.4j[3]; MSA 5.2082[9], 5.2083[3]).*

10. MUNICIPAL CORPORATIONS—ORDINANCES—STATUTES—CONSTITU-TIONAL LAW—PRE-EMPTION.

*The principle of pre-emption is that when general law on a specific subject occupies a particular field so completely that any local ordinances seeking to regulate conduct in that field will necessarily conflict because of inconsistency between the two, the ordinance must give way to the general law.*

11. OBSCENITY—STATUTES—PRE-EMPTION.

*A conclusion that state obscenity legislation has pre-empted the field would be justified if it were clearly evident that a city obscenity ordinance is in direct conflict with the Constitution or state statute; the field is not pre-empted merely because the state has entered into the field of obscenity regulation (MCL 750.343a et seq.; MSA 28.575[1] et seq.).*

12. MUNICIPAL CORPORATIONS—ORDINANCES—STATUTES—CONSTITU-TIONAL LAW—PRE-EMPTION.

*There must be an express showing of a legislative expression of intent to pre-empt the field before the courts will invalidate a local ordinance.*

13. OBSCENITY—MUNICIPAL CORPORATIONS—ORDINANCES—STATUTES—
PRE-EMPTION.

*The state obscenity statute neither expressly nor by reasonable
inference permits the dissemination of obscene material to
consenting adults; therefore, on that point it is within the
province of municipal authorities to further protect their legiti-
mate interests in the field of obscenity legislation through the
enactment of local ordinances prohibiting such conduct (MCL
750.343a et seq.; MSA 28.575[1] et seq.; East Detroit ordinances,
title IX, ch 129, §§ 9.301, 9.302, 9.303, 9.305).*

14. MUNICIPAL CORPORATIONS—ORDINANCES—STATUTES—PRE-EMP-
TION.

*The fact that a legislative subject is one which logically lends
itself to statewide uniform regulation or even demands it does
not justify a conclusion that such legislation has been enacted,
or if enacted is in conflict with local ordinances on the subject.*

15. OBSCENITY—STATUTES—PRE-EMPTION.

*A judgment whether the regulation of obscenity demands uni-
form, statewide treatment is for the Legislature, not the judi-
ciary, to make.*

*Joseph E. Mihelich* for plaintiff.

*Fleishman, Brown, Weston & Rohde, P. C.,* and
*Taylor & Rubin* for defendants.

PER CURIAM. This case is an appeal of convic-
tions for exhibition of two allegedly obscene films
under an East Detroit anti-obscenity ordinance.
Defendants argue that their convictions must be
reversed because the anti-obscenity ordinance in
question is pre-empted by the existing state statu-
tory scheme governing criminal obscenity offenses,
and is thus unconstitutional under Const 1963, art
7, § 22.

Given the comprehensive coverage of the field
under the state statutory scheme, MCLA 750.343a
*et seq.;* MSA 28.575(1) *et seq.,* and the need for a
uniform, statewide definition of criminal obscenity
offenses for purposes of protecting free speech and

effectively deterring obscenity, we hold that East Detroit's anti-obscenity ordinance is pre-empted by the existing state statutory scheme and is thus unconstitutional under Const 1963, art 7, § 22.

Statewide definition of obscenity allows for both vigorous, effective local prosecution under state law and the protection of legitimate freedom of expression. Moreover, localities may supplement the protection afforded them under the state obscenity statutory scheme with municipal zoning, such as that recently promulgated in Detroit, designed to regulate the location of establishments featuring so-called "adult entertainment". Such municipal zoning ordinances are outside the field of prohibition occupied by the state statutory scheme.

In the light of our holding, the other questions posed by defendant need not be resolved. The trial court is reversed.

## I—FACTS

In March, 1974, defendants James Llewellyn and Las Vegas Cinema, Inc., were charged with violation of chapter 129 of title IX, §§ 9.301, 9.302, 9.303, and 9.305 of the ordinance of the City of East Detroit governing the sale, transmutation and possession of obscene materials. More specifically, defendants were charged with exhibiting two allegedly obscene motion pictures.

The two motion pictures in question were seized pursuant to a search warrant issued by a magistrate of the Municipal Court of the City of East Detroit upon the affidavit of a police officer.

Defendants were tried before a jury in the Municipal Court of the City of East Detroit and were convicted.

An appeal *de novo* was taken to the Macomb County Circuit Court, and the jury returned a guilty verdict as to both defendants.

The Court of Appeals denied leave to appeal. We granted leave to appeal on January 5, 1976.

## II—PRE-EMPTION

Under Const 1963, art 7, § 22, a Michigan municipality's power to adopt resolutions and ordinances relating to municipal concerns is "subject to the constitution and law".[1] Thus, the dispositive issue in this case is whether the Legislature, through its enactment of MCLA 750.343a *et seq.;* MSA 28.575(1) *et seq.,* has pre-empted the East Detroit obscenity ordinance under which the defendants were convicted.[2]

Since the state statutory scheme defines and prohibits obscenity offenses, we are deciding in part whether a municipality is pre-empted from

---

[1] East Detroit is a home rule city. Under the home rule act, MCLA 117.4j(3); MSA 5.2083(3), the power of the home rule city to exercise its power is similarly "subject to the constitution and general laws of this state".

[2] The language of the ordinance is taken from the state statutory scheme, MCLA 750.343a *et seq.;* MSA 28.575(1) *et seq.,* with certain exceptions.

First, the ordinance defines the obscene material as "describing, or relating to 'Specified Sexual Activities' " outlined in § 9.305A of the ordinance. The state statutory scheme has no such provision.

Second, § 9.302 of the ordinance adds a three-pronged test of obscenity to the language of the state statutory scheme.

Third, § 9.306 of the ordinance provides for a penalty of no more than 90 days in jail and/or a fine of not more than $500. MCLA 750.-343a; MSA 28.575(1) provides for a penalty of not more than one year in jail and/or a fine of not more than $1,000.

Finally, § 9.301 of the ordinance provides that possession of three or more obscene articles is prima facie evidence of possession with intent to sell, distribute or show obscene material. MCLA 750.343a; MSA 28.575(1) has similar language indicating possession of *six* or more articles establishes a prima facie case.

establishing its own definition of and standards for obscenity.[3]

A municipality is precluded from enacting an ordinance if 1) the ordinance is in direct conflict with the state statutory scheme,[4] or 2) if the state statutory scheme pre-empts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation.[5]

In this case, we conclude, for reasons discussed below, that the state statutory scheme occupies the field of regulation which East Detroit seeks to enter so as to pre-empt the field.

In making the determination that the state has thus pre-empted the field of regulation which the city seeks to enter in this case, we look to certain guidelines.[6]

---

[3] The question of the impact of the requirements for obscenity regulation laid down by the United States Supreme Court in *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973), on the state criminal obscenity statutes was not raised or argued by the parties. We therefore need not consider this question in the instant case.

We note, however, that our invitation to the Legislature in *People v Bloss,* 394 Mich 79; 228 NW2d 384 (1975), to supplement the state statutory scheme proscribing the dissemination of obscene materials has to this point not been acted on. This Court continues to believe that it would be in the best interests of the state for the Legislature to act in this regard.

[4] *See Builders Ass'n v Detroit,* 295 Mich 272, 277; 294 NW 677 (1940); *see also Walsh v River Rouge,* 385 Mich 623, 637; 189 NW2d 318 (1971); *Miller v Fabius Twp Board,* 366 Mich 250, 258; 114 NW2d 205 (1962). A direct conflict exists under these cases when the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits.

[5] *Grand Haven v Grocer's Cooperative Dairy Co,* 330 Mich 694, 702; 48 NW2d 362 (1951); *Walsh v River Rouge, supra. See also Miller v Fabius Twp Board,* 366 Mich 250, 258; 114 NW2d 205 (1962); *Detroit v Recorder's Court Judge,* 56 Mich App 224, 227–228; 223 NW2d 722 (1974); Feiler, *Conflict Between State and Local Enactments—The Doctrine of Implied Preemption,* 2 Urban Lawyer 398, 408 (1971).

[6] For discussions of state-municipality pre-emption problems, *see* the following articles: Blease, *Civil Liberties and the California Law*

First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted. *Noey v Saginaw,* 271 Mich 595; 261 NW 88 (1935).[7]

Second, pre-emption of a field of regulation may be implied upon an examination of legislative history. *Walsh v River Rouge,* 385 Mich 623; 189 NW2d 318 (1971).[8]

Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. *Grand Haven v Grocer's Cooperative Dairy Co,* 330 Mich 694, 702; 48 NW2d 362 (1951); *In re Lane,* 58

---

*of Preemption,* 17 Hast L J 517 (1966); Note, *Constitutional Law—Pornography—Colorado Municipal Government Authority to Regulate Obscene Materials,* 51 Denver L J 75 (1974); Note, *Conflicts Between State Statutes and Municipal Ordinances,* 72 Harv L Rev 737 (1959); Feiler, *Conflict Between State and Local Enactments—The Doctrine of Implied Preemption, supra.*

[7] In *Noey,* the state Constitution granted the Legislature the authority to establish a Liquor Control Commission which, subject to statutory limitation, "shall exercise complete control of the alcoholic beverage traffic within this State". 271 Mich 595, 596.

Pursuant to this constitutional provision the Legislature enacted a statute creating a Liquor Control Commission and wrote "[e]xcept as by this act otherwise provided, the commission shall have the sole right, power and duty to control the alcoholic beverage traffic * * * ." 271 Mich 595, 596–597.

In the light of these provisions, the Court held that an ordinance setting the permissible time period for selling alcoholic beverages was invalid.

[8] In *Walsh v River Rouge,* this Court was asked to determine whether an emergency curfew ordinance granting certain emergency powers to the local mayor was pre-empted given the existence of a state statute granting similar emergency powers to the Governor. The Court held that the emergency powers granted to the Governor by the statute were exclusive, and that therefore the municipality was pre-empted from promulgating an ordinance granting the same emergency powers to the mayor.

In reaching its conclusion, this Court noted that the statute in question had been enacted in 1945, and that in 1968 and 1970, the Legislature had approved bills granting localities certain emergency powers. In both instances, the bills were vetoed by the Governor.

It was partially in the light of this history that the Court concluded that 1945 statute had vested the emergency powers in question exclusively in the Governor.

Cal 2d 99; 22 Cal Rptr 857; 372 P2d 897 (1962);[9] *Montgomery County Council v Montgomery Ass'n, Inc,* 274 Md 52; 325 A2d 112, 333 A2d 596 (1975).[10] While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption.[11]

Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest.

As to this last point, examination of relevant Michigan cases indicates that where the nature of the regulated subject matter calls for regulation adapted to local conditions, and the local regula-

[9] In *In re Lane,* 58 Cal 2d 99, 103; 22 Cal Rptr 857; 372 P2d 897 (1962), the California Supreme Court held that a city ordinance attempting to make sexual intercourse between unmarried persons a crime was pre-empted. The Court, in so holding, looked to the comprehensiveness of the statutory scheme:

"The Penal Code sections covering the criminal aspect of sexual activity are so extensive in their scope that they clearly show an intention by the Legislature to adopt a general scheme for the regulation of this subject."

[10] In *Montgomery County Council v Montgomery Ass'n, Inc,* 274 Md 52, 64–65; 325 A2d 112, 333 A2d 596 (1975), Maryland's highest appellate court, the Court of Appeals, held that county ordinances designed to regulate the campaign finance practices of certain candidates for county office were pre-empted, in part due to the comprehensiveness of the State Election Code.

It is also significant that in cases dealing with the analogous problem of *Federal* pre-emption, the pervasiveness of the Federal regulatory scheme is one of the well-settled guidelines in determining Federal pre-emption. *Northern States Power Co v Minnesota,* 447 F2d 1143, 1146 (CA 8, 1971); *Pennsylvania v Nelson,* 350 US 497, 502–504; 76 S Ct 477; 100 L Ed 640 (1956); *Rice v Sante Fe Elevator Corp,* 331 US 218, 230; 67 S Ct 1146; 91 L Ed 1447 (1947).

*See also* the articles cited in fn 5.

[11] *See* discussion to that effect in Note, *Municipal Corporations: Ordinances in Conflict with General Laws: Preemption by the State of Field of Regulating Criminal Aspects of Sexual Activity,* 10 UCLA L Rev 440, 444 (1963); Recent Decision, *Local Legislation—Implied Preemption by Occupation—Local Election Ordinances Held Invalid Because State Legislation Impliedly Preempted Field,* 35 Md L Rev 543, 550 (1976).

tion does not interfere with the state regulatory scheme, supplementary local regulation has generally been upheld.[12]

However, where the Court has found that the nature of the subject matter regulated called for a uniform state regulatory scheme, supplementary local regulation has been held pre-empted. Especially pertinent to the instant case in this regard is *Walsh v River Rouge, supra,* where this Court held pre-empted a municipal ordinance granting certain emergency powers to the mayor. The subject matter of the ordinance in *Walsh* involved the potential restriction of important civil liberties of the people, as does the case before us. The Court apparently concluded that the protection of these important civil liberties demanded that the state retain sole control of the circumstances under which the emergency powers would be exercised. 385 Mich 623, 639.

See also *Noey v Saginaw, supra* (the state was held to have exclusive authority to control alcoholic beverage traffic, with specific reference to the need for uniformity); *Grand Haven v Grocer's Cooperative Dairy Co,* 330 Mich 694; 48 NW2d 362

[12] *See People v McGraw,* 184 Mich 233, 238; 150 NW 836 (1915) (traffic ordinances allowed because it was "absolutely necessary * * * to enact rules and regulations peculiarly adapted to the conditions * * * found [in the locality])"; *Eanes v Detroit,* 279 Mich 531; 272 NW 896 (1937) (ordinance fixing operating hours for barber shops held not pre-empted, but struck down on other grounds); *Loose v Battle Creek,* 309 Mich 1; 14 NW2d 554 (1944) (zoning ordinance upheld); *Howell v Kaal,* 341 Mich 585; 67 NW2d 704 (1954) (zoning ordinance upheld); *Bane v Pontiac Twp,* 343 Mich 481; 72 NW2d 134 (1955) (provision of local zoning ordinance upheld on pre-emption grounds; other provisions struck down for other reasons). *Palmer v Superior Twp,* 60 Mich App 664, 677 *et seq.;* 233 NW2d 14 (1975) (zoning ordinance upheld); *contra Richards v Pontiac,* 305 Mich 666; 9 NW2d 885 (1943) (zoning ordinance was struck down, but its holding was modified in *Loose, supra,* and *Bane, supra,* to uphold the ordinances in those cases); *Miller v Fabius Twp Board,* 366 Mich 250, 260; 114 NW2d 205 (1962) (ordinance regulating the permissible hours for water skiing upheld).

(1951) (the state was held to have exclusive control over the pasteurization of milk).[13]

The four guidelines outlined above lead us to conclude that the state, in its criminal obscenity statutory scheme, has pre-empted the field of regulation which East Detroit seeks to enter with its anti-obscenity ordinance.

We have no express statutory language nor legislative history which indicates one way or the other whether the state statutory scheme pre-empts an ordinance such as the one before us.

However, the two other factors to be considered indicate that an ordinance such as the one before us has been pre-empted because the comprehensiveness of the statutory scheme established by the state shows a pre-emptive intent, and because the nature of the regulated subject matter demands uniform, statewide treatment.

As to the comprehensiveness issue, an examination of the state statutory scheme reveals a broad, detailed, and multifaceted attack on the sale, distribution and exhibition of obscenity.

In enacting the present statutory scheme, MCLA 750.343a *et seq.;* MSA 28.575(1) *et seq.,* the Legislature replaced its much simpler predecessor, MCLA 750.343; MSA 28.575[14] with a detailed five-section statutory framework intended to define and regulate obscenity.

The first section, MCLA 750.343a; MSA 28.575(1) prohibits the sale, transmutation, and exhibition of

---

[13] For discussion of the need for uniformity as a factor to be discussed in pre-emption cases, *see* Feiler, *Conflict Between State and Local Enactments—The Doctrine of Implied Preemption,* 2 Urban Lawyer 398, 404 (1971); Blease, *Civil Liberties and the California Law of Preemption, supra;* Note, *Constitutional Law—Pornography—Colorado Municipal Government Authority to Regulate Obscene Materials, supra.*

[14] The text of this now repealed statute can be found in *Butler v Michigan,* 352 US 380, 381; 77 S Ct 524; 1 L Ed 2d 412 (1957).

obscene material. Moreover, a standard for a
prima facie case of the prohibited conduct is estab-
lished, and the penalty for conviction is provided.

MCLA 750.343b; MSA 28.575(2) establishes with
particularity the definition and the standards for
obscenity to be applied in cases under MCLA
750.343a; MSA 28.575(1).

MCLA 750.343c; MSA 28.575(3) provides that
any person who publishes or distributes material
portraying illicit sex or perversion is guilty of
violating § 343a.

MCLA 750.343d; MSA 28.575(4) prohibits the
conditioning of distribution of a publication upon
the acceptance of materials covered under § 343a.

Finally, MCLA 750.343e; MSA 28.575(5) specifi-
cally prohibits the distribution of obscene materi-
als to minors, providing also its own penalty provi-
sion.

The breadth and detail of this statutory scheme
provides an indication that the Legislature has
pre-empted the definition and deterrence of crimi-
nal obscenity, at least to the exclusion of a supple-
mentary ordinance such as the one before us,
which seeks to establish its own definition and test
for obscenity, to modify the state standards for a
prima facie case of the prohibited conduct, and to
alter the state-prescribed punishment upon convic-
tion.

This conclusion is buttressed by the fact that, for
reasons discussed below, the definition and prohibi-
tion of obscenity offenses is clearly an area of the
law which demands uniform, statewide treatment.

First, it seems clear that if each locality in the
State of Michigan were allowed to establish its
own definition of obscenity, a great deal of uncer-
tainty and confusion would be created. We observe
that no less than the United States Supreme Court

has had over a period of decades considerable
difficulty in defining the line between obscenity
and protected speech and determining what mate-
rial constituted obscenity under such a definition.
To allow each of the multitude of Michigan locali-
ties to establish its own definition of obscenity
would be to invite the cultivation of a legal thicket
which would make both the scope of the individual
right to free expression and the permissible prohi-
bition of obscenity well-nigh impossible to deter-
mine.

Second, a balkanized system of obscenity defini-
tion and prohibition would, through the resultant
confusion and provocation of endless appeals, both
threaten important individual rights and under-
mine efficiency in the control of obscenity.

On the one hand, the uncertainty created by
local definitions of obscenity would effectively chill
the right to free expression,[15] and raise serious
due-process problems in that an unwary national
or statewide distributor of books or films may be
subject to criminal prosecution and incarceration
although there was little opportunity to discover
the nature of the prohibited conduct. It is a long-
standing rule in this state that criminal offenses
must establish with reasonable certainty the ele-
ments of the offense so that all persons subject to
their penalties may know what acts it is their duty
to avoid. *People v Goulding,* 275 Mich 353, 358 *et
seq.;* 266 NW 378 (1936). The unfairness which is
at the root of this rule is also present where local
definition of obscenity in municipalities of all sizes
across the state makes it extremely difficult for a

---

[15] *See* discussion in Blease, *Civil Liberties and California Law of
Preemption, supra,* and Note, *Constitutional Law—Pornography—Col-
orado Municipal Government Authority to Regulate Obscene Materi-
als, supra.*

national or statewide distributor to determine what acts it is his or her duty to avoid.[16]

On the other hand, a uniform, statewide system of obscenity regulation provides not only the fairest, but also the most effective means of combating obscenity. A balkanized system of obscenity regulation undoubtedly would cause criminal prosecutions under local ordinances to be considerably delayed in the appellate system. Such would be the case because a holding of an appellate court that a particular obscenity conviction was valid would not necessarily be dispositive of other convictions, even those involving the very same allegedly obscene materials, if the conviction were obtained under different local standards for obscenity. We note also that such a situation would put a heavy burden on a state appellate system already confronted with an ever-increasing caseload, and thus further slow appellate review of all cases.

For all the above reasons, we hold that the state has pre-empted the field which the municipality in this case seeks to enter.[17]

In so holding, we join at least two sister states

---

[16] *See In re Lane, supra,* where Chief Justice Gibson of the California Supreme Court suggests that a multiplicity of divergent regulations regarding sexual conduct might unfairly entrap an unwary and transient populace. 58 Cal 2d 99, 111; 372 P2d 897, 904 (concurring opinion). *See also Lambert v California,* 355 US 225; 78 S Ct 240; 2 L Ed 2d 228 (1957).

[17] We recognize that a statewide standard for obscenity is not mandated by the First Amendment of the United States Constitution as interpreted in *Hamling v United States,* 418 US 87, 105; 94 S Ct 2887; 41 L Ed 2d 590 (1974).

However, that is not the question before us. We deal here not with an interpretation of the First Amendment, but rather with an interpretation of the pre-emptive effect of Michigan criminal obscenity statutes under art 7, § 22 of our own Constitution.

We hold that the ordinances at hand are pre-empted because this state has concluded that a uniform statutory scheme is necessary to achieve the purpose and protect the values involved in obscenity legislation.

who have reached a similar conclusion. *Dimor, Inc v Passaic,* 122 NJ Super 296, 302; 300 A2d 191, 194 (1973), the Court was asked to determine the validity of a local ordinance prohibiting the showing of obscene motion pictures given the existence of a state statute governing obscenity. The Court held the ordinance invalid stating: "It is clear that the matter of obscenity must be governed by a uniform mode of treatment".

In *Whitney v Municipal Court of San Francisco,* 58 Cal 2d 907; 27 Cal Rptr 16; 377 P2d 80 (1962), the California Supreme Court held that the state had occupied the field of regulating the criminal aspects of obscene exhibitions, and hence a city ordinance prohibiting the showing of obscene motion pictures was pre-empted. See also *In re Moss,* 58 Cal 2d 117; 23 Cal Rptr 361; 373 P2d 425 (1962).

In reaching our holding today, we understand that many municipalities in this state wish to aggressively combat the dissemination of obscene materials in their locality, and we have no desire to deter that goal.

As we have suggested above, we feel that state-wide regulation of obscenity is not only the fairest, but also the most effective means of regulating obscenity, and each Michigan municipality has available to it the protection which the state statutory scheme provides.

Moreover, we do not mean to suggest in this opinion that a municipality is pre-empted from enacting ordinances outside the field of regulation occupied by the state statutory scheme governing criminal obscenity. For example, there is not the slightest indication that the state Legislature acted in MCLA 750.343a *et seq.;* MSA 28.575(1) *et seq.* to preclude local zoning ordinances governing the location of establishments featuring "adult entertainment" such as that recently approved by

the United States Supreme Court in *Young v American Mini Theaters, Inc,* 427 US 50; 96 S Ct 2440; 49 L Ed 2d 310 (1976).

The Detroit ordinance challenged in *Young* involved zoning, not criminal prohibition, and "adult establishments" featuring erotica not defined in terms of obscenity. Clearly, then, such municipal regulation is outside of the state's present statutory scheme governing criminal obscenity. In addition, the need for uniformity which has been in part the foundation of our opinion today has little relevance to such zoning ordinances, which speak to a significant local need to regulate the location of "adult establishments" and which are primarily local in their effect.[18]

The United States Supreme Court in upholding the Detroit ordinance under the Equal Protection Clause of the Fourteenth Amendment stated as follows:

> "[T]he city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect. Moreover, the city must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." 427 US 50, 71.

We concur with the United States Supreme Court's judgment that it is important that government be allowed to regulate the location of adult establishments through zoning ordinances, and nothing in today's opinion should be interpreted to the contrary.

The trial court's conviction of defendants is hereby reversed.

KAVANAGH, C. J., and WILLIAMS, LEVIN, and BLAIR MOODY, JR., JJ., concurred.

---

[18] *See* fn 12, citing numerous cases upholding the right of municipalities to enact zoning ordinances against challenges asserting state pre-emption.

Ryan, J. *(dissenting)*. Today my colleagues have struck down the City of East Detroit's obscenity ordinance,[1] and in consequent effect every other comparable obscenity ordinance in the state, on the grounds that the state criminal obscenity statute[2] has pre-empted that field of legislation.

If indeed the state had pre-empted the field of obscenity legislation, municipal ordinances of the East Detroit type would offend Const 1963, art 7, § 22.[3] Because I am persuaded there has been no pre-emption, I respectfully dissent.

East Detroit is a "home rule city" with authority[4] to adopt a city charter which may provide:

"For the enforcement of all such local, police, sanitary and other regulations as are not in conflict with the general laws." MCLA 117.4i(9); MSA 5.2082(9).

and,

"For the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its

---

[1] Chapter 129 of title IX, §§ 9.301, 9.302, 9.303 and 9.305.

[2] MCLA 750.343a *et seq.;* MSA 28.575(1) *et seq.*

[3] Const 1963, art 7, § 22 provides:
"Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section."

[4] MCLA 117.4i; MSA 5.2082.

municipal concerns subject to the constitution and general laws of this state." MCLA 117.4j(3); MSA 5.2083(3).

In pursuance thereof, the city adopted a charter, ch 2, § 1 of which provides that the city may regulate or prevent all things "detrimental to the health, morals, comfort, safety, convenience and welfare of the inhabitants of the city". Pursuant to this charter authority, the city council adopted the aforementioned obscenity ordinance.

That the regulation of activities affecting public morals and welfare is a proper "municipal concern" is a proposition well settled in our cases. See *Watnick v Detroit,* 365 Mich 600; 113 NW2d 876 (1962); *People v Sell,* 310 Mich 305; 17 NW2d 193 (1945); *People v Pennock,* 294 Mich 578; 293 NW 759 (1940). See, also, *Young v American Mini Theaters, Inc,* 427 US 50; 96 S Ct 2440; 49 L Ed 2d 310 (1976). Incontrovertibly, obscenity is a matter germane to public morals and welfare.

The majority has concluded that the state statutory scheme has pre-empted the East Detroit obscenity ordinance, and all those like it, for two reasons:

1) "[B]ecause the comprehensiveness of the statutory scheme established by the state shows a pre-emptive [legislative] intent",

and

2) "[B]ecause the nature of the regulated subject matter demands uniform, statewide treatment".

In my view that conclusion is neither legally nor factually sound.

Essentially, the principle of pre-emption is that when general law on a specific subject occupies a

particular field so completely that any local ordinances seeking to regulate conduct in that field will necessarily conflict because of inconsistency between the two, the ordinance must give way to the general law.

Consequently, to justify the conclusion in this case that the state legislation has pre-empted the field of obscenity regulation, it must be clearly evident that the East Detroit ordinance is in direct conflict with the Constitution or a state statute. Merely because the state has entered into the field of obscenity regulation is no justification for the implication that local regulation will necessarily conflict. When the Legislature prohibits certain conduct, local communities may nevertheless prohibit other and different conduct in the same field, providing the state and local enactments are not in conflict.

We addressed this aspect of the pre-emption doctrine in a different context in *Miller v Fabius Twp Board,* 366 Mich 250, 256–257; 114 NW2d 205 (1962), in which we quoted approvingly from 37 Am Jur, Municipal Corporations, § 165, p 790 as follows:

"It has been held that in determining whether the provisions of a municipal ordinance conflict with a statute covering the same subject, the test is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits. * * *

"The mere fact that the State, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal bylaw are not in themselves pernicious, as being unreasonable or discriminatory, both will stand. The fact that an ordi-

nance enlarges upon the provisions of a statute by
requiring more than the statute requires creates no
conflict therewith, unless the statute limits the require-
ment for all cases to its own prescription. Thus, where
both an ordinance and a statute are prohibitory and the
only difference between them is that the ordinance goes
further in its prohibition, but not counter to the prohi-
bition under the statute, and the municipality does not
attempt to authorize by the ordinance what the legisla-
ture has forbidden or forbid what the legislature has
expressly licensed, authorized, or required, there is
nothing contradictory between the provisions of the
statute and the ordinance because of which they cannot
coexist and be effective. Unless legislative provisions
are contradictory in the sense that they cannot coexist,
they are not deemed inconsistent because of mere lack
of uniformity in detail."

Until today, this Court has consistently followed
the quoted rule in holding that portions of a field
not covered by state law are open to local regula-
tion. *Miller v Fabius Twp Board, supra; City of
Howell v Kaal,* 341 Mich 585; 67 NW2d 704 (1954);
*Loose v Battle Creek,* 309 Mich 1; 14 NW2d 554
(1944); *Eanes v Detroit,* 279 Mich 531; 272 NW 896
(1937); *People v McGraw,* 184 Mich 233; 150 NW
836 (1915).

"The rule has long been recognized that municipali-
ties are not divested of all control even where the
legislature has enacted laws." *Miller, supra,* p 257.

This Court has never inferred pre-emption
merely because the state and local communities
have legislated in the same field. On the contrary,
in order to insure the reasonableness of such a
finding and to properly safeguard the authority of
local communities, this Court has always demon-
strated an express showing of the Legislature's

intent to exclusively occupy the field before invali-
dating an ordinance on pre-emptive grounds.[5]

---

[5] From *Walsh v River Rouge,* 385 Mich 623, 635; 189 NW2d 318
(1971):

"The act specifically declares in § 2, 'the legislative intent [is] to
invest the governor with sufficiently broad power of action in the
exercise of the police power of the state to provide adequate control
over persons and conditions during such periods of impending or
actual public crisis or disaster. The provisions of this act shall be
broadly construed to effectuate this purpose.' "

From *Grand Haven v Grocer's Cooperative Dairy Co,* 330 Mich 694,
701; 48 NW2d 362 (1951):

"That by enactment of the pertinent statutory provisions, the
legislature intended to and did take over plenary control of pasteuri-
zation of dairy products is quite conclusively indicated by the follow-
ing quoted sections of the statute:

" 'Sec. 1. The purpose of this act is to secure the wholesomeness and
safety of milk, cream, skimmed milk and other milk products by
requiring pasteurization as herein set forth.'

\* \* \*

" 'Sec. 5. It shall be the duty of the department of agriculture to
enforce the provisions of this act.' 1948 CL 288.131, 288.135; MSA
12.693[11], 12.693[15])."

From *Builders Ass'n v Detroit,* 295 Mich 272, 275–276; 294 NW 677
(1940):

"The State statute provides, in part, as follows:

" 'No person shall keep open his shop, warehouse, or workhouse, or
shall do any manner of labor, business, or work, or be present at any
dancing, or at any public diversion, show, or entertainment, or take
part. in any sport, game, or play on the first day of the week. The
foregoing provisions shall not apply to works of necessity and charity,
nor to the making of mutual promises of marriage, nor to the
solemnization of marriages. And every person so offending shall be
punished by fine not exceeding ten dollars for each offense.' 1929 CL
9078; MSA 18.851.

" 'No person who conscientiously believes that the seventh day of
the week ought to be observed as the Sabbath, and actually refrains
from secular business and labor on that day, shall be liable to the
penalties provided in this chapter, for performing secular business or
labor on the said first day of the week, provided he disturb no other
person.' 1929 CL 9083; MSA 18.855.

\* \* \*

"In the instant case the legislature, in prohibiting the transaction
of business on Sunday, exempts from the application of the statute
those who conscientiously believe that the seventh day of the week
should be observed as the Sabbath, providing they disturb no other
person. No such exception is to be found in the ordinance before us. It
applies to all alike, regardless of religious convictions. It denies to the
conscientious observer of the seventh day of the week as the Sabbath

The majority concedes that there is "no express statutory language nor legislative history which indicates one way or the other whether the state statutory scheme pre-empts an ordinance such as the one before us". The Court thus appears to overlook our precedential requirement that an express showing of a legislative expression of intent to pre-empt the field be made before we will invalidate a local ordinance.

The language of the statute itself in no sense expresses or even infers an intent to occupy the field of obscenity regulation to the exclusion of local communities.

The first of the two reasons assigned by the majority for finding pre-emption is that "the comprehensiveness of the statutory scheme established by the state shows a pre-emptive intent". That the statute in question is not sufficiently comprehensive to suggest such a legislative intent is evident from a line by line comparison of it with the ordinance. The ordinance forbids nothing the statute permits and permits nothing the statute forbids, criteria we approved in *Miller, supra.* Further evidence that the statute lacks the pre-emptive comprehensiveness claimed for it by the ma-

---

the right to transact business on Sunday, which is granted such individual by the exception to be found in the statute. It attempts to prohibit that which the statute permits and is, therefore, void."

From *Noey v Saginaw,* 271 Mich 595, 598; 261 NW 88 (1935):

"The power conferred upon the city under the constitutional provision is 'subject to the Constitution and general laws of this State.' The constitutional amendment, providing for a liquor control commission, vested in it when established by act of the legislature *'complete control of the alcoholic beverage traffic within this State, including the retail sales thereof.'* The legislature, after providing for its creation, conferred upon it, subject to certain exceptions, *'the sole right, power and duty to control the alcoholic beverage traffic * * * within the State,'* and to *'adopt rules and regulations governing the carrying out of this act and supplemental thereto.'*

"The word 'control,' as used in the Constitution, means to regulate and govern."

jority is this Court's on the record declaration in *People v Bloss,* 394 Mich 79, 81; 228 NW2d 384 (1975), while speaking of the statute here in question, that:

"We are divided as to whether such statutes can properly be construed by us *without further legislative expression* as proscribing the dissemination of 'obscene' material to consenting adults." (Emphasis added.)

Absent such construction or subsequent legislation,[6] local ordinances proscribing such conduct can hardly be said to be inconsistent with the general law or the general law be held so comprehensive as to pre-empt local ordinances.

Because the state law has neither expressly nor by reasonable inference permitted the dissemination of obscene material to consenting adults, on that point alone it is unquestionably within the province of local authorities to further protect their legitimate interests in the field of obscenity legislation through the enactment of local ordinances prohibiting such conduct.

The second reason relied upon by the Court in concluding that the ordinance before us is pre-empted is "because the nature of the regulated subject matter demands uniform, statewide treatment".

The fact that a subject is one which logically lends itself to statewide uniform regulation or even demands it is hardly justification for the conclusion that such legislation has been enacted, or if enacted is in conflict with local ordinances on the subject. More significantly, whether the regulation of obscenity "demands uniform, statewide treatment" is a judgment for the Legislature to

---

[6] None has been forthcoming to date.

make, not the judiciary. It has given no indication to date, despite this Court's invitation in *Bloss, supra,* of an intent to pre-emptively provide the comprehensive, uniform statewide regulation my colleagues say the subject demands.

The considerations advanced by the majority in favor of pre-emption are factors to be weighed by our state Legislature in deliberations concerning future obscenity legislation.

Should the Legislature deem it appropriate, it may choose to completely occupy the field at that time. Under the present statutory scheme, however, local governments are not prohibited from legislating in the interest of furthering a valid "municipal concern" by regulating obscenity within their respective communities in a manner that does not conflict with the state's non-exclusive regulation in this field.

The prevailing opinion does violence to the legitimate interests of our municipalities in locally regulating a subject of vital concern to them by striking down virtually every ordinance in Michigan proscribing obscenity, despite the fact that the state has not adequately legislated in the field.

COLEMAN and FITZGERALD, JJ., concurred with RYAN, J.