COAST CIGARETTES SALES, INC. AND MAJESTIC CIGA-
RETTES SALES, INC., PLAINTIFFS, v. THE MAYOR AND
CITY COUNCIL OF THE CITY OF LONG BRANCH; THE
CITY CLERK OF THE CITY OF LONG BRANCH; CHIEF
OF POLICE OF THE CITY OF LONG BRANCH AND THE
SUPERVISOR OF LICENSES OF THE CITY OF LONG
BRANCH, DEFENDANTS.

COAST CIGARETTES SALES, INC. AND MAJESTIC CIGA-
RETTES SALES, INC., PLAINTIFFS, v. THE MAYOR AND
TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MID-
DLETOWN, THE TOWNSHIP CLERK OF THE TOWN-
SHIP OF MIDDLETOWN AND CHIEF OF POLICE OF
THE TOWNSHIP OF MIDDLETOWN, DEFENDANTS.

Superior Court of New Jersey
Law Division

Argued November 29, 1972—Decided November 29, 1972.

*Mr. Peter W. Kenny* argued the cause for plaintiffs (*Messrs. Reussille, Cornwell, Mausner & Carotenuto,* Attorneys).

*Mr. Robert L. Mauro* argued the cause for defendants, The Mayor and City Council of the City of Long Branch, The City Clerk of the City of Long Branch, Chief of Police of the City of Long Branch and The Supervisor of Licenses of the City of Long Branch.

*Mr. John H. Deppeler, III,* argued the cause for defendants, The Mayor and Township Committee of the Township of Middletown, The Township Clerk of the Township of Middletown and Chief of Police of the Township of Middletown (*Mr. Peter P. Frunzi, Jr.,* Attorney).

LANE, J. S. C. These actions in lieu of prerogative writs challenging the validity of defendants' ordinances requiring licensing and a license fee for plaintiffs' cigarette vending machines are before the court on final hearing.

The issues set forth in the pretrial order are:

(1) Are the ordinances invalid on the ground that the field has been pre-empted by the Cigarette Tax Act, *N. J. S. A.* 54:40A-1, *et seq?*

(2) Is the charge of five dollars for each vending machine confiscatory?

Plaintiffs are owners and distributors of cigarette vending machines. Coast Cigarettes Sales, Inc. has 26 machines in Long Branch and 15 in Middletown. Majestic Cigarettes Sales, Inc. has 41 machines in Long Branch and 67 machines in Middletown. Each plaintiff is required to pay to the State of New Jersey $5.00 per machine for a retail dealer's certificate for each machine. In addition, Coast is required to obtain an annual wholesale dealer's license at a fee of $250, while Majestic pays $350.00 annually for a distributor's license. *N. J. S. A.* 54:40A-4.

Plaintiffs attack portions of Art. III "Vending Machines" of the Revised Ordinances of the Township of Middletown as amended and supplemented, which provides in pertinent part:

§ 8.29 License required.

It shall not be lawful within the limits of the Township of Middletown for any person to operate any amusement, vending, novelty or other machine unless such person shall obtain a license for such machine and pay the license therefor as hereinafter mentioned and set forth.

§ 8.30 License fees.

The license fee for such amusement, vending, novelty or other kind of machine shall be as follows:

For all large music box machines the sum of $25.00

For all pin ball machines the sum of $25.00

For all machines where the coin is deposited in order to operate the same is $0.01 (one), the sum of $2.00

For all other machines the sum of $5.00.

Plaintiffs also attack portions of Chapter VII "Mercantile Licenses" of the Revised General Ordinances of the City of Long Branch, which provides in pertinent part:

7-2.1(a) It shall be unlawful for any person to commence or carry on any profession, vocation, trade, business, calling or occupation specified in this section without first having obtained a license from the city to do so, or without complying with any and all provisions concerning the same contained in this section, or in any other ordinance adopted by the city.
7-2.8(d) Schedule of fees

\* \* \*

Automatic cigarette vending machines, five ($5.00) dollars.

Plaintiffs demand judgment declaring that the licensing and fee requirements of these two ordinances are confiscatory and that defendants in imposing them have legislated in an area pre-empted by the Cigarette Tax Act, *N. J. S. A.* 54:40A-1, *et seq.* under which plaintiffs have already received licenses and paid fees for their vending machines.

Plaintiffs argue that the licensing and fee provisions of the two ordinances are invalid as an attempt at municipal regulation in an area pre-empted by the State in its adoption of the Cigarette Tax Act, *N. J. S. A.* 54:40A-1, *et seq.*

■ ■ Municipalities have no powers other than those delegated to them by the Legislature and by the State Constitution. *Ringlieb v. Tp. of Parsippany-Troy Hills,* 59 *N. J.* 348, 351 (1971); *Wagner v. Newark,* 24 *N. J.* 467, 474 (1957). *N. J. S. A.* 40:52-1, *et seq.,* grants to a municipal governing body the power to require licenses for certain broad categories of activity. *N. J. S. A.* 40:48-2 is a sweeping grant of legislative power to the municipality:

Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.

However, there is an implied limitation upon broad grants of power to local municipalities. Such powers relate to matters of local concern which may be determined to be necessary and proper for the good and welfare of local inhabitants. They do not extend to matters involving state policy or in the realm of affairs of general public interest and applicability. The needs of such matters inherently in need of uniform treatment do not vary locally and municipal regulation thereof would not be useful and might, by diverse treatment, cause substantial harm. *Summer v. Township of Teaneck,* 53 *N. J.* 548, 552–553 (1969); *In re Public Service Electric and Gas Co.,* 35 *N. J.* 358, 370–371 (1961); *Wagner v. Newark, supra,* 24 *N. J.* at 478.

Assuming that a particular matter is not "inherently in need of uniform treatment," a municipality may be precluded from regulating a particular matter, which it otherwise could, because the Legislature has pre-empted the field. " 'Attached to every municipal ordinance there is an implied condition that it must yield to the predominant power of the State.' " *Ringlieb v. Tp. of Parsippany-Troy Hills, supra,* 59 *N. J.* at 352; *Wagner v. Newark, supra,* 24 *N. J.* at 480. Absent an express exclusion from the field by the State the question of pre-emption must be determined by ascertaining the legislative intention on the facts of each case. *State v. Ulesky,* 54 *N. J.* 26, 29 (1969). See *Ringlieb v. Tp. of Parsippany-Troy Hills, supra,* 59 *N. J.* at 348.

*N. J. Const.,* Article IV, Section VII, paragraph 11 establishes a presumption of validity of ordinances enacted by municipalities. This requires a liberal construction of municipal ordinances, and therefore a finding of pre-emption must be clear. *Kennedy v. City of Newark,* 29 *N. J.* 178, 187 (1959).

To prevail on a claim of pre-emption, a plaintiff may show that there exists an unresolvable conflict between the ordinance and the statute. *Summer v. Township of Teaneck, supra,* 53 *N. J.* at 554; *Chester Tp. v. Panicucci,* 116 *N. J. Super.* 229, 234 (App. Div. 1971). Alternatively, a

plaintiff can show pre-emption though no conflict exists by demonstrating an intent on the part of the Legislature to completely occupy the area being controlled to the exclusion of the municipalities. *Summer v. Teaneck, supra,* 53 *N. J.* at 554; *State v. Ulesky, supra,* 54 *N. J.* at 29; *Chester Tp. v. Panicucci, supra,* 116 *N. J. Super.* at 234. Absent a showing of an intent to totally pre-empt, a municipality pursuant to its delegated powers can deal with specific local problems by expanding control in that area so long as there is no conflict with the legislative proscription. *Fred v. Mayor and Council, Old Tappan Borough,* 10 *N. J.* 515, 521–522 (1952); *Chester Tp. v. Panicucci, supra,* 116 *N. J. Super.* at 235; *Kligman v. Lautman,* 98 *N. J. Super.* 344, 355 (App. Div. 1967), aff'd 53 *N. J.* 517 (1969). Even if an ordinance on its face not in conflict could conflict with a particular statutory scheme in certain applications, the ordinance is not to be declared invalid absent any intent to pre-empt the total field by the Legislature. *Kennedy v. City of Newark, supra,* 29 *N. J.* at 187; *Sayreville v. Pennsylvania R. R. Co.,* 26 *N. J.* 197, 200, appeal dismissed 358 *U. S.* 44, 79 S. Ct. 43, 3 L. Ed. 2d 45 (1958); *Chester Tp. v. Panicucci, supra,* 116 *N. J. Super.* at 235.

*N. J. S. A.* 54:40A–3 provides:

After the effective date of this act, no person shall engage in, or conduct the business of manufacturing, purchasing, selling, consigning or distributing cigarettes in this State, nor shall any person acquire unstamped cigarettes for consumption, storage or use in this State without having first obtained the appropriate license for that purpose as prescribed by this act.

*N. J. S. A.* 54:40A–4 provides in detail for the issuance of licenses for distributors, manufacturers, manufacturers' representatives, wholesale dealers, retail dealers, consumers and vending machines and fixes the fee therefor.

*N. J. S. A.* 54:40A–6 provides:

Any license required by this act shall be in addition to any and all other licenses which may be required by law.

■ Superficially these provisions which require state licensing but do not prohibit licensing requirements under other laws might suggest that municipal licenses for vending machines may be required in conjunction with state licenses. However, a court must not be guided by a single sentence or member of a sentence but must look to the provisions of the whole act and its object and policy, as well as to statutes *in pari materia*. *Brewer v. Porch*, 53 *N. J.* 167, 174 (1969).

■ The Cigarette Tax Act (*N. J. S. A.* 54:40A-1, *et seq.*) and the Unfair Cigarette Sales Act (*N. J. S. A.* 56:7-18, *et seq.*) are *in pari materia*. *Lane Distributors, Inc. v. Tilton*, 7 *N. J.* 349, 357 (1951). When the two acts were passed in 1948, the accompanying statements indicated that the purpose of the Unfair Cigarette Sales Act was to prohibit the sale of cigarettes at less than cost because the use of cigarettes as a "loss-leader" is an unfair and deceptive practice. The purpose of the Cigarette Tax Act is to be found in its title which was:

AN ACT imposing a tax on the sale, possession for sale, use, consumption or storage for use of cigarettes within the State; providing for the licensing of distributors, dealers and consumers; providing for the control of the transportation of cigarettes in and through the State; defining certain words for the purposes of the act; prescribing the methods of collecting the tax imposed; providing penalties for violations; and making certain violations misdemeanors.

In *Lane Distributors, Inc. v. Tilton, supra*, the Supreme Court held certain definitions in both acts unconstitutional. They were amended to conform with that opinion in 1952. *L.* 1952, *c.* 246; *L.* 1952, *c.* 247. Among the stated purposes of these amendments was an attempt to tighten the Cigarette Tax Act "with regard to the illegal smuggling of cigarettes into the state." The preamble to the amended Unfair Cigarette Sales Act noted that:

Whereas, Unfair, dishonest, deceptive, destructive and fraudulent business practices existing in transactions involving the sale of, offer

to sell, or inducement to sell, cigarettes in the retail and wholesale trades in this State have been and are demoralizing and disorganizing said trades; and

Whereas, The advertising, offering for sale, or sale of cigarettes below cost in the retail or wholesale trade with the intent of injuring competitors or destroying or substantially lessening competition, is an unfair and deceptive business practice; and

Whereas, Such practices adversely affect the collection of taxes from the sale of cigarettes and license fees imposed on distributors, wholesalers, retailers and others engaged in the sale of cigarettes; and

Whereas, It is hereby declared to be the policy of this State to promote the public welfare by prohibiting such sales, and it is the purpose of this act to carry out that policy in the public interest; * * *. [L. 1952, c. 247]

It seems clear that the Legislature's intent was to deal with a state-wide problem and to protect the general welfare of all citizens of New Jersey from the various misuses to which the sale and distribution of cigarettes have proven subject. Such problems as the control of smuggling and deceptive trade practices, and the regulation of those who distribute and sell cigarettes throughout the State require uniform, centralized treatment which it appears these two acts were intended to provide.

Defendants argue that this interpretation of the scope of the State's powers in this area conflicts with the provisions of N. J. S. A. 40:52-1, the source of municipal licensing power, which provides that a municipality may license a number of specified businesses and structures. After twelve paragraphs referring to specific situations the Act provides:

Nothing in this chapter contained shall be construed to authorize or empower the governing body of any municipality to license or regulate any person holding a license or certificate issued by any department, board, commission, or other agency of the State; provided, however, that the governing body of a municipality may make, amend, repeal and enforce ordinances to license and regulate real estate auctioneers or real estate brokers engaged in selling at auction and their business as provided in this section despite the fact that such real estate auctioneers or brokers may be licensed by the New Jersey Real Estate Commission and notwithstanding the provisions of this act or any other act.

In the detailed list of activities which may be licensed by a municipal governing body, cigarette vending machines are conspicuously absent. *N. J. S. A.* 40:52–1 does not authorize a municipality to license all businesses but only those described in the statute. See, *e. g., Gilbert v. Town of Irvington*, 20 *N. J.* 432, 435–436 (1956); *Salomon v. Jersey City*, 12 *N. J.* 379, 389–390 (1953); *Mogelefsky v. Schoem*, 90 *N. J. Super.* 49, 57 (App. Div. 1966), modified 50 *N. J.* 588 (1967); *Coculo v. Trenton*, 85 *N. J. Super.* 523, 526 (App. Div. 1964); *Tonsorial Inc. v. City of Union City*, 115 *N. J. Super.* 33, 37–38 (Law Div. 1971); *Devine v. Mantua Tp.*, 28 *N. J. Super.* 299, 305 (Law Div. 1953); *State v. Stockl*, 85 *N. J. Super.* 591, 593 (Cty. Ct. 1964); *Belmar v. Berube*, 63 *N. J. Super.* 69, 74 (Cty. Ct. 1960). The phrase "all other kinds of business" in subsection (g) is not to the contrary. *Salomon v. Jersey City, supra,* 12 *N. J.* at 389.

The final paragraph of *N. J. S. A.* 40:52–1, which expressly prohibits municipalities from licensing anyone already licensed by an arm of the State, further invalidates defendants' ordinance requirements. Defendants argue that this proviso stands in direct conflict with *N. J. S. A.* 54:40A–6, allowing the State license to be required in addition to other licenses.

Reconciliation of apparently conflicting statutes to conform to the spirit of the legislation as a whole is a common exercise of the judicial interpretive function. *Clifton v. Passaic County Board of Taxation*, 28 *N. J.* 411, 421 (1958). The Legislature is presumed to be familiar with its own enactments and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose. Courts have the duty of reconciling apparently conflicting statutes so as to give effect to both expressions of the legislative will. *State v. Federanko*, 26 *N. J.* 119, 129–130 (1958). Statutes cannot be read in a vacuum void of relevant historical and policy considerations

and related legislation. *Matawan Borough v. Monmouth Cty. Tax Bd.,* 51 *N. J.* 291, 299 (1968).

The Legislature provided that the State license would exist in addition "to any and all other licenses which may be required by law" at a time when it was presumed to know that a law already in effect expressly excluded cigarette vending machines from a detailed enumeration of activities which the municipalities could license. In this historical context and in light of state policy considerations the "other licenses" referred to are those which other state agencies or the federal government may impose for the general welfare. Permits are required of manufacturers and export warehouse proprietors of tobacco products at the federal level. 26 *U. S. C.* 5712. Tobacco products are subject to federal regulation while in interstate commerce, just as they are the concern of the State when they are smuggled into intrastate commerce. They are of medical concern at both state and federal levels. See, *e. g., N. J. S. A.* 9:5–1, and the stiffening federal requirements for cigarette advertising, 15 *U. S. C.* 1331, *et seq.* In sum, cigarettes are an actual and potential target of state and federal regulation in many areas. It is concluded that the Legislature foresaw this trend in enacting *N. J. S. A.* 54:40A–6 and was not referring to municipal licensing.

It is the court's duty to construe a statute as it is written and to enforce the legislative will as written, and not according to some unexpressed intention. *Dacunzo v. Edgye,* 19 *N. J.* 443, 451 (1955); *Schmoll v. Creecy,* 104 *N. J. Super.* 126, 138 (App. Div.), rev'd on other grounds 54 *N. J.* 194 (1969). The court cannot say that *N. J. S. A.* 54:40A–6 represents even an unexpressed intent on the part of the Legislature to extend the municipality's licensing powers which are so precisely limited in *N. J. S. A.* 40:52–1. *Safeway Trails, Inc. v. Furman,* 41 *N. J.* 467 (1964) is not applicable.

In holding that a municipality does not have authority to require licenses for cigarette vending machines,

the court is not saying that the municipality may not have the power to regulate such machines at all. In *Coculo v. Trenton, supra,* Judge Kilkenny notes:

The limitation upon the city's right to *license* a business or profession when a person holds a license from the State, or one of its boards or agencies, to carry on such a business or profession, does not render such a state licensee immune from other municipal ordinances statutorily authorized and duly adopted to promote the public health, safety, morals or welfare. * * * [85 *N. J. Super.* at 527]

See *Mogelefsky v. Schoem, supra,* 50 *N. J.* at 597–598. Thus, defendants may have the necessary police power under *N. J. S. A.* 40:48–2 to regulate plaintiffs' machines so long as they can show a need to do so for the public welfare, and so long as they do not require a license and consequently a license fee. No such showing has here been made.

The Cigarette Tax Act provisions for state licensing of cigarette vending machines have pre-empted the field in which defendants' ordinances have been adopted. Even if this were not the case, the municipal licensing power does not include a delegation of authority to license cigarette vending machines.

Plaintiffs argue that even if it were concluded that the municipalities may require licenses for cigarette vending machines, they may not charge license fees for such machines purely for revenue purposes.

*N. J. S. A.* 40:52–2 provides:

The governing body may fix the fees for all such licenses, *which may be imposed for revenue,* and may prohibit all unlicensed persons and places and vehicles, businesses and occupations from acting, being used, conducted or carried on; impose penalties for violation of ordinances providing for licenses, and revoke any license for sufficient cause and after notice and hearing. [Emphasis added.]

It has been held that the primary purpose of this provision, in conjunction with *N. J. S. A.* 40:52–1, is to protect the general welfare, and only secondarily to raise revenue.

It is not a delegation of general taxing power. *Salomon v. Jersey City, supra,* 12 *N. J.* at 390.

In the present cases the Long Branch ordinance states explicitly that its sole purpose is to raise revenue, while counsel for Middletown concedes that the Middletown ordinance was adopted for the same purpose. Such a purpose alone is not compatible with *N. J. S. A.* 40:52–1 by its terms or as interpreted by the Supreme Court, nor is it permitted under the general police powers of *N. J. S. A.* 40:48–2. *Garden State Racing Ass'n v. Cherry Hill Tp.,* 42 *N. J.* 454, 461 (1964). Defendants' fees have therefore been imposed without legislative authorization.

The provisions of each ordinance insofar as they apply to cigarette vending machines are invalid. Defendants will be enjoined from enforcing such provisions in connection with cigarette vending machines.