MENYUK, J.T.C.
This matter comes before the court on cross-motions for summary judgment. The complaint contests assessments of tax made pursuant to the Cigarette Tax Act, N.J.S.A. 54:40A-1 to -45 (the “Act”), and cigarette “floor tax.” See L. 2004, c. 67, § 2a; L. 2003, c. 115, § 2a; L. 2002, c. 33, § 2a. For the following reasons, the motion of the defendant Director, Division of Taxation (“Director”) is granted and the motion of plaintiff Kasot, Inc. (“Kasot”) is denied.
Kasot operates a nursing home known as the Atlantic Highlands Nursing Home in Atlantic Highlands, New Jersey. During the period April 1, 1999 through September 30, 2004 (the “audit period”), Kasot purchased cigarettes from JR’s Smoke Shop located in Irving, New York (“JR’s”). JR’s is not licensed in any capacity to sell cigarettes in New Jersey, and does not charge or collect any cigarette tax from its customers. The cigarettes are ordered by telephone or internet, Kasot pays for them with a business credit card, and the cigarettes are delivered to the nursing home by common carrier. Kasot states (and the Director does not dispute) that it purchases the cigarettes for its patients who reimburse Kasot at Kasot’s cost for the cigarettes.
According to the certification of the nursing home administrator, a large percentage of the nursing home residents have psychiatric histories. The administrator also states that smoking is a major activity for the residents and is essential for their psycho *590 logical well-being because it establishes a routine for them. Any effort to deprive residents of cigarettes causes a “myriad of psychiatric and psycho-social problems.”
Ninety to ninety-five percent of the residents are Medicaid eligible, and have a limited personal needs allowance of thirty-five dollars a month. The nursing home is designated as the custodian of the resident’s personal needs allowance in the resident admission agreement.
All of the residents require fully supervised care and have no access to cigarettes and other items such as candy or small gifts, except as provided by the nursing home staff.[1] Residents obtained cigarettes by requesting an activity or social services staff member to obtain cigarettes for them. The cigarettes were provided by Kasot from the purchases it made from JR’s. Kasot always distributed the cigarettes at cost and it was not its intent to make a profit from the transactions. Kasot kept a daily log sheet of cigarette purchases and the residents’ personal needs accounts were debited for the exact amount of the item. According to the nursing home administrator, sometimes an item had to be charged off by the facility because the resident had insufficient funds in his or her personal needs account to cover the cost of the item, and Kasot actually lost over $12,000 in unreimbursed cigarette costs during the audit period.
During an audit of Kasot’s business by the Division of Taxation (“Division”), the auditor found the cigarette purchases on Kasot’s credit card statements while reviewing the business’s expenses. She also reviewed invoices issued by JR’s for the purchases. The auditor was shown two cases of cigarettes without tax stamps while she was at the facility.
The auditor was able to establish from the invoices and credit card statements that Kasot purchased 5758 cartons of cigarettes *591 from JR’s during the audit period and assessed cigarette tax[2]. For purposes of the cigarette floor tax, she estimated from the invoice dates and credit card transaction dates the number of cigarettes in inventory as of July 1, 2002, July 1, 2008, and July 1, 2004, the dates during the audit period when increases in the cigarette tax rate went into effect. See L. 2004, c. 67; L. 2003, c. 115; L. 2002, c. 33.
Following the audit, the Division issued a notice of assessment related to final audit determination on March 24, 2005. Cigarette taxes in the amount of $70,326, plus interest and penalties, and cigarette floor taxes in the amount of $995, plus interest and penalties, were assessed. Kasot timely protested the cigarette taxes and the cigarette floor taxes to the Division. According to the auditor’s report, sales and use tax was also assessed on the cigarette purchases, based on the cost of the cigarettes to Kasot, even though Kasot did not provide the auditor with the monthly billing details on the residents’ personal needs accounts. That tax was not protested and has been paid. The Director upheld the assessments of cigarette tax and cigarette floor tax in a final determination letter dated October 16, 2006. Kasot thereafter timely filed a complaint with the Tax Court.
The Director contends that Kasot is a retail dealer as defined by the Act, see N.J.S.A 54:40A-2e, and is liable for the tax on cigarettes purchased without tax stamps and transferred to the residents of the nursing home. The Director also asserts that Kasot is liable for cigarette floor tax, which is imposed on inventory in the possession of a retail dealer on the effective date of an increase in the cigarette tax rate, in the amount of the additional tax that is due under the new rate. L. 2004, c. 67, § 2a; L. 2003, c. 115, § 2a; L. 2002, e. 33, § 2a.
Kasot contends that it is not a retail dealer as defined by the Act, because it does not purchase cigarettes for sale to the *592 residents of the nursing home with the intent to make a profit. The term “retail dealer” is defined as “any person who is engaged in this State in the business of selling cigarettes at retail,” including persons who place cigarette vending machines on any premises. N.J.S.A. 54:40A-2e. Kasot emphasizes that it is not in the “business” of selling cigarettes, and asserts that in order to be a retail dealer within the meaning of the Act, one must be motivated by the potential for pecuniary gain. It relies on the principle that statutory words and phrases should be given their ordinary meaning. Kasot maintains that when a taxing provision is in doubt, and there is no legislative history that dispels that doubt, the court should construe the statute in favor of the taxpayer, citing an unpublished opinion of the Appellate Division dealing with the liability of an out-of-state distributor under the Tobacco Products Wholesale Tax, N.J.S.A. 54:40B-1 to -14. See aliso, Fedders Financial Corp. v. Director, Div. of Taxation, 96 N.J. 376, 385, 476 A.2d 741 (1984).
The Director asserts that Kasot is clearly a retail dealer as defined by the Act and consistent with the ordinary meaning of the term, since it is selling cigarettes to the ultimate consumer of those cigarettes. She also argues that tax imposed on Kasot conforms with the purpose of the Act read as a whole.
At oral argument, the court asked the parties to address in supplemental briefs the issue of whether Kasot was liable for cigarette tax as a “consumer” under the Act. “Consumer” is defined as “any person except a distributor or a manufacturer who acquires for consumption, storage or use in this State cigarettes to which New Jersey revenue stamps have not been attached.” N.J.S.A. 54:40A-2f. Kasot argues that it is not a consumer because the patients “received, used and ultimately stored the cigarettes.” It maintains that the Director should pursue the residents of the nursing home for the tax. It also asserts that its due process rights will be violated if the Director is permitted to collect tax on grounds other than asserted in the notice of assessment. The Director contends that Kasot meets the statutory definition of consumer, and that she is permitted to raise alternate grounds for tax assessments in the Tax Court without violating *593 due process. Of course, consumers are liable for cigarette tax only. It is solely retail dealers who are liable for floor tax. L. 2004, c. 67, § 2a; L. 2003, c. 115, § 2a; L. 2002, c. 33, § 2a. Consequently, if Kasot is determined to be a consumer but not a retail dealer, it will not be responsible for floor tax.
The cross-motions are made pursuant to R. 4:46, which provides that summary judgment should be granted when “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). “By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a ‘genuine issue as to any material fact challenged.’” Brill v. Guardian, Life Ins. Co. of Am., 142 N.J. 520, 529, 666 A.2d 146 (1995). The court must consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. Brill, supra, 142 N.J. at 540, 666 A.2d 146. In this case, there are no issues of material fact in dispute, and disposition by way of summary judgment is appropriate.
The Act is designed to impose a tax on the sale of cigarettes and to prescribe a method for collection of that tax through a system of licensing distributors, dealers and consumers. See C.I.C. Corp. v. Township of East Brunswick, 266 N.J.Super. 1, 9, 628 A2d 753 (App.Div.1993) (citing Coast Cigarettes Sales, Inc. v. Mayor of City of Long Branch, 121 N.J.Super. 439, 447, 297 A.2d 599 (Law Div.1972)). The statutory plan imposes the tax at the top of the distribution chain through the sale to licensed distributors of tax stamps to be affixed by the distributor to each pack of cigarettes. N.J.S.A. 54:40A-11. Stamped cigarettes sold by a licensed distributor to wholesale and retail dealers therefore include the cigarette tax in the sales price that is charged to those dealers and that is eventually passed on to the consumer. Wholesale and retail dealers are forbidden to accept deliveries of unstamped or *594 illegally stamped cigarettes. N.J.S.A. 54:40A-16. Possession of unstamped or illegally stamped cigarettes by a wholesale or retail dealer is prima facie evidence that the cigarettes were possessed in violation of the provisions of the Act. Ibid.
To effectuate the design of the Act, persons engaged in or conducting the business of manufacturing, purchasing, selling, consigning or distributing cigarettes in New Jersey must obtain a license. N.J.S.A 54:40A-3. Persons acquiring unstamped cigarettes for consumption, storage or use in this State similarly must obtain a license. N.J.S.A 54:40A-3. All licensed persons are required to file periodic reports with the Director. N.J.S.A. 54:40A-7. A licensed consumer who has acquired unstamped cigarettes for use, storage or consumption in New Jersey must remit tax together with the report. Ibid.
There are virtually no exemptions from the tax. The act imposes tax on the sale of cigarettes made to the State government, or any State institution or agency, or any political subdivision of the State. N.J.S.A. 54:40A-9. The only exception to the taxation of cigarettes is when its imposition would be contrary to the United States Constitution or statutes, or “where an authorized agent of the United States Veterans Administration purchases cigarettes from donations for free distribution to and for consumption by hospitalized veterans housed in State institutions.” N.J.SA 54:40A-10.
The Director contends that Kasot is not excused from the provisions of the Act merely because it did not intend to make a profit from the sale of cigarettes. She points out that the transaction between Kasot and a nursing home resident constitutes a “sale,” defined by the Act as “any sale, transfer, exchange, theft, barter, gift, or offer for sale and distribution, in any manner or by any means whatsoever.” N.J.SA 54:40A-2n. She also emphasizes that the auditor personally observed unstamped cigarettes in Kasot’s possession. If Kasot is a retail dealer, possession of unstamped cigarettes is prima facie evidence that the cigarettes were possessed in violation of the Act. N.J.S.A. 54:40A-16. The Director acknowledges that the Act does not contain a definition of *595 “retail sale,” but contends that the term “retail” ordinarily means sales of goods to the ultimate consumer rather than for sale for further distribution. See, e.g., Black’s Law Dictionary 1317 (1999); see also N.J.S.A. 54:32B-2(e), a section of the Sales and Use Tax Act, which defines “retail sale” as “any sale, lease, or rental for any purpose, other than for resale, sublease, or subrent.”
I conclude that, although Kasot is literally a “consumer” under the Act, the design of the Act compels the conclusion that it is a retail dealer under the Act and thus liable for both the assessments of cigarette tax, cigarette floor tax and the associated penalties and interest. The Act’s “definitions cannot be analyzed in a vacuum. The intent of the entire statute must be considered.” Supermarkets Gen. Corp. v. Director, Div. of Taxation, 4 N.J.Tax 431, 436 (1982), aff'd. o.b. per curiam, 6 N.J. Tax 252 (App.Div.1983). See also, Stephen Little Trucking v. Director, Div. of Taxation, 19 N.J.Tax 461, 465-66 (2001) (in construing a definition contained in the Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -29, court looked to the general structure and purpose of the act rather than to the definition alone).
The Act plainly means to subject to tax unstamped cigarettes sold, transferred or exchanged, whether for consideration or not, whether for profit or not. See N.J.S.A. 54:40A-2n, defining “sale.” Kasot was in the business of selling cigarettes to the residents of the nursing home, and the fact that it did not intend to make a profit or that it actually lost money on the transactions is not a consideration under the Act. See, e.g., Supermarkets General Corp., supra, 4 N.J.Tax at 431, upholding tax imposed on a distributor with respect to unstamped cigarettes destroyed by fire.
Presumably, Kasot had some business purpose purchasing cigarettes chargeable to a corporate charge account, and in making cigarettes available at cost to its residents. The nursing home administrator stated that smoking is a major activity for residents and that efforts to deprive residents of cigarettes cause psychosocial problems. It can be inferred that Kasot would find it more difficult to operate the home if its residents exhibited such psycho *596 social problems. That Kasot purchased cigarettes from JR’s rather than permitting its staff members to go off-premises to purchase cigarettes with the tax stamps already affixed from a local merchant for the use of the residents presumably also served some business purpose for Kasot. Notably, this was not a casual endeavor on the part of Kasot. As calculated by the Division’s auditor, the purchase invoices and credit card receipts demonstrated that Kasot purchased 5758 cartons of cigarettes over a five-and-one-half-year audit period. Assuming full occupancy of 155 beds, that amounts to more than 37 cartons of cigarettes for each and every resident during the audit period.
It is also significant that the design of the Act is to permit virtually no exemptions. To accept Kasot’s argument is to place it in a superior position to the State and its agencies, such as hospitals, correctional institutions, and colleges, which would be required to collect tax on any sales or transfers of cigarettes to the residents of those institutions. Viewed as a whole, the Act intends to tax every unstamped cigarette that comes into New Jersey and is destined for sale or use here, with an extremely limited exemption for certain sales to hospitalized veterans. N.J.S.A. 54:40A-10; see also N.J.A.C. 18:5-2.1(b) (“immediately” imposing tax on cigarettes acquiring a taxable status, and setting forth under what conditions cigarettes acquire a taxable status). Kasot argues that the Director’s construction of the term “retail sale” is flawed because it would mean that every sale or gift of cigarettes to an ultimate consumer is taxable. Kasot’s contention does not accurately describe the Director’s contention, which is that every sale or' gift of 'unstamped cigarettes is taxable. If Kasot had purchased cigarettes on which tax had already been collected by the affixation of tax stamps, it would not now be liable for the cigarette tax or cigarette floor tax.
Kasot’s belated contention that the Director should attempt to collect tax from its residents demonstrates why the Act was designed to collect the tax from the top of the distribution chain: the tax is extremely difficult for the Division to administer and enforce from the bottom up. Kasot itself maintains that it has been unable to collect the price of the cigarettes—let alone the *597 tax—from some of its residents, and it has the advantage of knowing who and where its customers were at the time of the sale. It is now years after the sales in question and the identity and whereabouts of Kasot’s customers may be known to Kasot, but not to the Division. If Kasot believes it is owed money by its residents and former residents, that is a matter between Kasot and those to whom it sold cigarettes.[3]
Tax is imposed on the sale, use or possession for sale or use of cigarettes within the State. As elaborated on by the Director’s regulations, the Act imposes the tax immediately after the cigarettes acquire a taxable situs here. N.J.A.C. 18:5—2.1(b). Cigarettes acquire a taxable situs in New Jersey when, among other things, they are sold in New Jersey, possessed for sale in New Jersey, stored for sale in New Jersey, or stored for use in New Jersey. N.J.A.C. 18:5—2.1(b)(1), (2), (3), (5). Kasot came into possession of the cigarettes and stored cigarettes when Kasot (not its residents) took delivery from the common carrier.
That Kasot has not obtained a license to sell cigarettes does not excuse it from being liable for tax on unstamped cigarettes in violation of the Act. It was required to obtain a license and file reports with the Director. N.J.S.A. 54:40A-3, -7. Those licensing and reporting requirements are the primary mechanisms for administering and enforcing the tax. Kasot did not comply with those provisions. The Director nevertheless has sufficient authority to prevent tax evasion and to assess the tax against an unlicensed retail dealer under the Act. See N.J.S.A. 54:40A-20 (authorizing and empowering the Director to administer and enforce the Cigarette Tax Act and to make such rules and regulations as she deems necessary). The Director may, in her discretion, if more practical, collect the taxes due otherwise than by means of tax stamps, provided such a method will adequately *598 protect New Jersey’s tax revenue. N.J.A.C. 18:5-2.2. If a taxpayer fails to file a report or return required by the Act, the Director may estimate and assess the taxes due from the taxpayer. N.J.A.C. 18:5-8.2. N.J.S.A 54:49-5, a section of the State Uniform Tax Procedure Law made applicable to the Act by N.J.S.A. 54:40A-21, similarly authorizes the Director to estimate and assess the tax where the taxpayer fails to file a report required by any state tax law. See also N.J.A.C. 18:5-7.6, promulgated by the Director under authority of N.J.S.A. 54:40A-20. That regulation provides:
The Director [may], in his [or her] discretion, and in such manner as he [or she] may determine, adjust any taxpayers’ records, tax reports or tax returns to make a fair and reasonable determination of any taxes, fees, penalties and interest due under the Act whenever it appears that:
(a) Any taxpayer fails to maintain its books, records, papers, vouchers, accounts, invoices, or other documents in accordance with sound accounting principles and the requirements of the Act and these regulations; or
(b) Any taxpayer conducts his business or maintains his records in such a manner as to directly or indirectly distort his true tax liability; or
(c) Any taxpayer has an agreement with any other taxpayer or any other person for the purpose of evading any taxes due under the Act; or
(d) Any taxpayer’s activities, business, or transactions are improperly or inaccurately reflected.
I conclude that the Director had adequate statutory authority to make the assessments of cigarette tax and cigarette floor tax in issue here.
Finally, Kasot’s administrative protest contended that the penalties assessed against it with respect to the cigarette tax and the cigarette floor tax should be abated. The final determination letter upheld the penalties. The complaint before this court demanded that the cigarette tax, floor tax and penalties and interest be set aside on the ground that plaintiff merely served as a conduit for nursing home residents to obtain cigarettes. Having found that the taxes were validly assessed, and Kasot’s cross-motion having failed to separately raise the issue of abatement of penalties, those penalties are also affirmed. For purposes of completeness, I will nevertheless address the issue.
N.J.S.A. 54:49-ll(a) provides that if the failure to pay any tax when due is explained to the satisfaction of the Director, she may *599 remit or waive the payment of any penalty in whole or in part. The Director’s determination whether to abate penalties is to be respected unless it is arbitrary or unreasonable. Patel v. Director, Div. of Taxation, 13 N.J.Tax 509, 515-16 (1993). Kasot’s obligations under the Act were clear, and I do not find a denial of abatement of late filing or payment penalties to be unreasonable or arbitrary in this case. Moreover, the Director did not absolutely refuse to abate late payment penalties in this case, but stated in the final determination letter that until the tax is paid in full, no adjustment will be made on late payment penalties. With respect to the amnesty penalty imposed pursuant to N.J.S.A. 54:53-18b, the Legislature has directed that it is not subject to waiver or abatement. Ibid.
For the foregoing reasons, the Director’s motion for an order of summary judgment dismissing the complaint with prejudice is granted and Kasot’s motion is denied.

 According to the audit report, at the time of the auditor's visit to Kasot's nursing home facility in September 2004, the nursing home had 155 beds with approximately 125 beds currently occupied.

 During the audit period, the tax rate was $0.04 per cigarette through June 30, 2002; $0,075 effective July 1, 2002 through June 30, 2003; $0.1025 effective July 1, 2003 through June 30, 2004; and $0.12 effective July 1, 2004 through July 14, 2006. See L. 2004, c. 67; L. 2003, c. 115; L. 2002, c. 33.

 While the auditor accepted the statements of the nursing home administrator that the cigarettes were sold at cost, she noted that she was unable to verify the charges to the resident's individual accounts for the cigarette purchases Consequently, it is possible that some cigarettes were sold tax-free to staff and others at the nursing home.